## KALK vs. FIELDING.

*October 13 — November 10, 1880.*

*Chattel Mortgage:   Bona Fides:   Evidence.*

1. In an action by a chattel mortgagee against an officer who had attached the goods as property of the mortgagor, plaintiff having testified in his own behalf that he received *a letter* from the mortgagor a day or two before the execution of the mortgage, and having stated, on cross examination, that he had left the letter at home, it was error to refuse the defendant leave to cross-examine him as to its contents (for the purpose of disproving the *bona fides* of the mortgage), although he had not been notified to produce it.   [TAYLOR, J., does not concur in this view.]

2. In such an action, the court should permit a full and exhaustive examination of the parties to the mortgage upon all questions bearing upon the good faith of the transactions between them.

3. Thus, it appearing from the cross examination of plaintiff in this case, that he and the mortgagor had an interview shortly after the giving of the mortgage, and before the attachment was levied, defendant should have been allowed to ask further questions adapted to elicit from the witness evidence as to whether, at such interview, the mortgagor had informed plaintiff that he was making large sales of mortgaged goods, and receiving large sums of money therefor, without accounting to the plaintiff for the same.

4. Statements made by the mortgagor to obtain credit, when he bought the goods of the attaching creditors, are admissible in evidence to show a fraudulent intent on his part, although the jury should be instructed that they cannot prejudice the mortgagee unless he was privy to such intent.

5. In such a case, if the mortgagor is in court, or where his attendance could be easily procured, and is not called as a witness, defendant's counsel may properly comment upon the fact to the jury.

6. The mortgage, which was upon the contents of a drug store, including not only the stock on sale, but articles not intended for sale, provided that so long as its conditions were fulfilled, the mortgagor should remain in possession of the property, and, in consideration thereof, should keep it in as good condition as it then was. *Held*, that this should not be construed as authorizing the mortgagor to sell the goods and with the proceeds purchase others in their place.

7. When the mortgagee, in such case, has proven that his mortgage was given to secure an actual indebtedness (there being nothing on its face which shows it to be fraudulent), this is *prima facie* proof that it was

given in good faith, and meets the requirement of sec. 2319, R. S.; and it is then for defendant to impeach the *bona fides* of the transaction. *Sargeant v. Solberg*, 22 Wis., 132; *James v. Van Duyn*, 45 id., 512.

8. To render a chattel mortgage void in law because taken for a larger amount than was in fact due the mortgagee, it must appear that it was so taken *intentionally*, and not by mere mistake, in computation or otherwise.

APPEAL from the Circuit Court for *Racine* County.

Replevin, for a stock of goods. The case is thus stated in part by Mr. Justice TAYLOR:

"This action is brought by plaintiff as mortgagee of a stock of goods owned by his son, against the sheriff of Racine county, who had seized the goods upon an attachment against the son. The action in which the attachment issued was commenced a day or two after the mortgage was given and filed, and the attachment was issued nine or ten days thereafter. The proof on plaintiff's part showed that the son was indebted to his father in the sum of about $1,800, for money theretofore loaned to him, and for which the father (the present plaintiff) held the son's two notes, one for $1,200, dated December 1, 1875, due six years after date, and one for $300, dated February 26, 1878, due six months after date, both drawing interest at ten per cent. per annum; and nothing had been paid on either of these notes previous to the taking of the chattel mortgage except one year's interest on the $1,200 note."

The court gave the following instructions at plaintiff's request: 1. A debtor may mortgage his property to one creditor in preference to any other creditors to secure the payment of any actual indebtedness, and such mortgage, when made in good faith, is not fraudulent. 3. The fact that plaintiff is the father of the mortgagor raises no presumption of fraud, if such mortgage was given and received in good faith to secure an actual indebtedness and without intent to hinder, delay or defraud creditors. 4. If the mortgagor was actually indebted to the plaintiff upon the notes in evidence, and the plaintiff

Kalk vs. Fielding.

took the mortgage in good faith for the purpose of securing the payment of said notes, and not as a mere cover or device to delay, hinder or defraud creditors, then the mortgage is valid. 5. If you should find that the mortgagor intended to hinder, delay or defraud his creditors at the time when the chattel mortgage was executed and delivered, but that the plaintiff did not share in or was not aware of such intent, but took the mortgage for the purpose of securing the indebtedness due him, then the mortgage is valid and you must find for the plaintiff. As the 6th instruction, the plaintiff requested the court to read to the jury sec. 2314, R. S., which was done. The court refused to instruct the jury at defendant's request, that the burden of proof was on the plaintiff, and that before he could recover he must have established, by a preponderance of evidence, that the mortgage was given in good faith to secure payment of an actual indebtedness, and not with the intent to place the mortgagor's property beyond the reach of his other creditors.

The case is further stated in the opinion.

Plaintiff had a verdict and judgment, and defendant appealed from the judgment.

For the appellant there was a brief signed by *Fish & Dodge* and *John B. Winslow*, and oral argument by *Mr. Fish* and *Mr. Winslow*.

For the respondent there was a brief signed by *S. & A. S. Ritchie* and *H. V. Van Pelt*, and oral argument by *A. S. Ritchie*.

TAYLOR, J. The appellant assigns twelve grounds of error: 1. The court erred in sustaining plaintiff's objection to questions calling for communications by letter between plaintiff and his son, C. F. Kalk, and questions calling for oral communications between plaintiff and said C. F. Kalk, and as to the intention of plaintiff; also in its statement to jury in folio 63. 2. The court erred in sustaining plaintiff's objection to ques-

tions in cross examination of James Fielding as to what was being done with the goods at the time of the attachment, and as to statements of Kaempfer, C. F. Kalk's clerk; also in striking out evidence of Kaempfer's statements. 3. The court erred in sustaining plaintiff's objection to questions to Charles Baumbach as to the person from whom the goods in controversy were purchased, and as to statements made by C. F. Kalk for the purpose of obtaining credit. 4. The court erred in sustaining plaintiff's objection to comments of defendant's attorneys on the non-production of C. F. Kalk as a witness, and in charging the jury to consider only the evidence. 5. The court erred in holding the mortgage valid on its face, and in so instructing the jury, and in refusing to give the third and fourth instructions requested by defendant. 6. The court erred in holding that the burden of proof to establish fraud was upon the defendant, and in so instructing the jury, and in refusing to give the second instruction requested by defendant. 7. The court erred in giving to the jury the first and fourth instructions requested by plaintiff. 8. The court erred in giving to the jury the third instruction requested by plaintiff. 9. The court erred in giving the fifth instruction to the jury requested by plaintiff, and in modifying the seventh instruction asked by defendant. 10. The court erred in giving to the jury the sixth of the instructions requested by plaintiff, and in reading to the jury section 2314, R. S. 11. The court erred in overruling defendant's motion to set aside the verdict and for a new trial. 12. The court erred in taxing as costs in favor of plaintiff the items set out in folios 111 and 112, except as modified (folio 113).

The first error assigned is the rejection of the evidence offered by the defendant upon cross examination of the plaintiff, *first*, as to what information he had received from his son just before he took the mortgage, by a letter addressed to and received by him; and *second*, as to a conversation had between the plaintiff and his son, the mortgagor, shortly after the

mortgage was given. The plaintiff, as a witness on his own behalf, had answered that he had received a letter from his son the 17th or 18th of February, 1879. The mortgage was given on the 19th of that month. The counsel for the defendant then asked whether the plaintiff had that letter with him, and he replied that he had not; that he left it at home. Counsel then put the following questions, which were objected to by the plaintiff, and the objections sustained: "What did that letter say to you?" "Did that letter inform you that he was about to be sued, and you had better send a man there?" My own opinion is that the objections were properly sustained, upon the ground that the questions called for the contents of the letter; that the letter was the best evidence, and should have been produced, or notice to produce the same should have been given, before the contents could be proved by the oral testimony of the witness. The other members of this court are inclined to hold that the question should have been answered, for the reason that the object of the question was to elicit the fact that the plaintiff had information from his son that he was about to be sued, and that he had better see about his own claim; that the fact that he had obtained such information was material, and it was immaterial whether he had received the information by letter or otherwise; that, the letter being in possession of the plaintiff, if the defendant was willing to rely upon the plaintiff's recollection as to its con- tents, the plaintiff had no reason for objecting that the letter was the best evidence; that such objection, under the circum- stances, was one which could affect only the rights of the defendant, and he might, if he saw fit, waive it.

Upon the further cross examination of the plaintiff, it ap- peared that the mortgagor and the plaintiff had an interview shortly after the mortgage was given and before the attach- ment was levied. The defendant's counsel asked the following questions, which were objected to by the plaintiff, and the objections sustained by the court: "Did he say anything to

you about how much his receipts were, when he was there to see you?" "Did you learn from your son that there were bills in the hands of attorneys for collection against him?" "Did he tell you the amount of sales that were being made?" We are of the opinion that these were proper questions on the cross examination of the plaintiff, and that the court erred in sustaining the plaintiff's objections. The defendant was attacking the *bona fides* of the mortgage claim of the plaintiff, and insisting that it was not given in good faith for the purpose of securing the debt due from the mortgagor to him, but for the purpose of a cover to prevent other creditors from subjecting the mortgaged property to the payment of their debts. Any evidence, therefore, which would tend to show that purpose, was competent and should have been admitted. If, therefore, the defendant could have shown by this evidence that the mortgagor had told the plaintiff he was making large sales of the stock mortgaged, and had received large sums of money on such sales, without accounting to the mortgagee for the same, and without objection on his part, it would have been strong evidence to go to the jury upon the question of the good faith of the plaintiff in taking and holding the mortgage on the goods. It would tend strongly to disprove the fact that the mortgage was taken as security for his debt, if it appeared that he allowed the mortgagor to sell large quantities of the goods and appropriate the receipts of the sales to other purposes than the payment of his debt. The other evidence shows that no payments were made to the plaintiff after the giving of the mortgage until the first of April, long after the conversation inquired about. If, therefore, the answers to the questions had shown the receipt of any considerable sums of money from the sales, such evidence would have tended to show that the mortgagor was appropriating the proceeds of the sales of the mortgaged property to his own use, with the assent of the plaintiff. In cases of this nature the court should permit a full and exhaustive examination of the

parties upon all questions which have a bearing upon the question of the good faith of the transaction, as the rights of the attaching creditors must depend very much upon the evidence which can be elicited from them.

The second assignment of error we do not think well taken, because the evidence in the case shows what was in fact being done with the goods at the time the sheriff levied his attachment, and as to that fact there was no dispute in the evidence.

The third assignment we are inclined to hold well taken, so far as it relates to the rejection of the evidence offered to show the statements made by the mortgagor at the time he bought the goods of the attaching creditors. The evidence offered tended to show the fraudulent intent of the mortgagor. His intent was a material fact in issue, and for that purpose the evidence was admissible, although the fraudulent intent on the part of the mortgagor would not prejudice the mortgagee unless he were privy to such intent, and aided in its execution. The objection being general, if the evidence was admissible for any purpose it should have been received, and the court should have instructed the jury as to how far it would affect the rights of the plaintiff. See cases cited in appellant's brief.[1]

The fourth assignment is not well taken. The record does not disclose what the nature of the comments of the defendant's counsel were, which the court seemed to consider irrelevant and improper, and we cannot say from the record that any error was committed by the court in intimating that such comments were improper. We think, however, that the counsel for the defendant would be justified in commenting upon the fact that the plaintiff did not call the mortgagor as a witness, if he was in the court, or where his attendance could have been easily procured.

The fifth assignment raises the question whether the mort-

---

[1] The following are the cases referred to: *Beard v. Dedolph*, 29 Wis., 136; *Bonner v. Ins. Co.*, 13 id., 677; *Hanson v. Ins. Co.*, 45 id., 321. — REP.

gage was void on its face. The only reason given for this claim is because it provides as follows: "And as long as the conditions of this mortgage are fulfilled, the said first party (mortgagor) to remain in peaceful possession of said property, and in consideration thereof agrees to keep said property in as good condition as it now is, at the cost and expense of said first party." This agreement, it is urged, authorized the mortgagor to sell the mortgaged goods and use the proceeds to purchase others in their place, and so gave the mortgagor the right to go on with his business as though no mortgage had been given. We do not think this is the true construction of the agreement. The mortgage used was a printed form, and the agreement above quoted was in the printed portion. This part of the mortgage, we think, was intended to apply only to such articles covered by the mortgage as were not intended for sale, but were used in the business of the mortgagor, and as to such articles he was to keep the same in repair at his own cost until forfeiture. It would, we think, be contrary to the intent of the parties, and to the language used, to construe it as an agreement to permit the mortgagor to sell the property mortgaged on his own account, provided he purchased other property of a like kind in its place.

The sixth assignment of error is based upon the instructions given by the learned circuit judge as to the construction to be given to section 2319, R. S. 1878. The circuit judge gave the construction to this section which this court has very broadly intimated should be given to it in the cases of *Sargeant v. Solberg*, 22 Wis., 132, and *James v. Van Duyn*, 45 Wis., 512. In the last case it is said: "We do not think the statute was intended to put upon the plaintiff the burden of proof throughout the whole case, and compel him to prove affirmatively that his mortgage was not in fact fraudulent and void as to creditors. When the mortgagee has proved that the mortgage was given to secure an actual indebtedness, and the amount thereof, he has, in fact, established *prima facie*

Kalk vs. Fielding.

that it was given in good faith, unless there be something on the face of the mortgage which shows it to be fraudulent." We are still inclined to give this construction to the statute, notwithstanding the very able argument made by the learned counsel for the appellant in favor of a different construction. We think the object of the statute was to negative the presumption which arises under the statute concerning chattel mortgages. By that statute the filing of a chattel mortgage in the proper clerk's office is declared to be equivalent to the delivery to, and the continued possession thereof retained by, the mortgagee, of the property described in the mortgage. Under this statute a mortgagee would make out a *prima facie* case in his favor against any one claiming under the mortgagor by simply proving the execution of his mortgage, and the filing of it in the proper office; and the burden of proof to show that the mortgage was not given to secure a real indebtedness would be upon the party claiming under the mortgagor. This statute made it difficult for the party attacking the mortgage to prove affirmatively that there was no *bona fide* debt due to the mortgagee from the mortgagor, or to show that the debt was not as great as that specified in the mortgage. These facts were generally known only to the mortgagor and mortgagee, and consequently the party attacking the validity of the mortgage would be compelled to call upon the parties hostile to him, as his witnesses, to attack the mortgage, especially if he sought to attack it on the ground that there was no *bona fide* debt due from the mortgagor to the mortgagee, or that the real debt was less than that stated in the mortgage. The section of the statute removes this difficulty when an officer is a party, and requires the mortgagee to assume the affirmative upon these questions, and show that there is a debt due from the mortgagor to him, and the amount thereof, and that the mortgage was given to secure that debt; and when he has done this, we think he has done all that is necessary to make out a *prima facie* right to recover. We do

not think the mortgagee is bound to establish the negative upon all other issues in the case, which, if established affirmatively, would tend to show the mortgage fraudulent and void as to creditors.

The seventh, eighth, ninth and tenth assignments of error relate to instructions given to the jury upon the trial in the court below. After a careful consideration of the instructions which are excepted to, we are of the opinion that the court committed no error in giving the same; that they are all applicable to the facts in the case, and do not violate any rule of law. The appellant also insists that the court erred in refusing to instruct the jury "that if the plaintiff, or his agent, took the mortgage for more than was in fact due to the plaintiff from the mortgagor, and claimed to hold the property for the full amount of the mortgage against the creditors of the mortgagor, then the mortgage is fraudulent and void as to such creditors." We think this instruction was properly refused, for the reason that there is no evidence in the case showing that the plaintiff intended to take the mortgage for any greater amount than his debt, nor that he claimed to hold the property mortgaged for any greater sum. The most the evidence shows is that a slight mistake was made in computing the amount due on the notes, and a larger amount than was actually due was in fact inserted in the mortgage. In order to render a chattel mortgage void in law because taken for a larger amount than is in fact due to the mortgagee, it must appear that it was intentionally taken for such greater sum. If it was so taken by mistake, in computation or otherwise, it will not render the mortgage void in law. The fact may go to the jury upon the question of the fraudulent intent of the parties, but it does not render the mortgage void in law unless it be knowingly taken for more than there is due.

We think the court erred in not setting aside the verdict and granting a new trial on account of the errors occurring on the trial in excluding the evidence offered by the appellant, as

above stated in this opinion; and for that reason the judgment of the circuit court must be reversed.

*By the Court.*—The judgment of the circuit court is reversed, and the cause remanded for a new trial.