Geisendorff *v.* Eagles *et al.*

No. 10,196.

GEISENDORFF *v.* EAGLES ET AL.

FRAUDULENT CONVEYANCE.—*Evidence.*—In attacking the good faith of a sale or conveyance of property, it is always competent to show that the vendor or grantor was in embarrassed circumstances when the sale or conveyance was made.

SHERIFF'S SALE.—*Purchaser.*—*Removal of Property.*—Where ice, situated in ice-houses, is sold at sheriff's sale, the purchaser is entitled to a reasonable time in which to make suitable arrangements and to remove the same.

EVIDENCE.—*Witness.*—*Hypothetical Question.*—Where a witness testifies as to the value of property in controversy, he may be asked hypothetical questions either by the court or counsel on cross-examination, for the purpose of testing the accuracy of his judgment as to such value.

From the Noble Circuit Court.

*S. Claypool* and *W. A. Ketcham*, for appellant.

*A. A. Chapin*, *B. Harrison*, *C. C. Hines* and *W. H. H. Miller*, for appellees.

NIBLACK, C. J.—Action by Sarah H. Geisendorff, in the nature of a suit in replevin, against Nathaniel T. Eagles, sheriff of Noble county, John C. Hall and Mary Haughton, to recover the possession of the ice contained in three ice-houses situated upon the banks of the lake, or reservoir, at Rome City, in said county of Noble, valued at $7,000.

Answers in general denial. The cause has been twice tried. The first trial resulted in a finding and judgment for the defendants. That judgment was reversed by this court. See *Geisendorff* v. *Eagles*, 70 Ind. 418.

At the second trial, the circuit court again found for the defendants, fixing the value of the ice at $5,500, and assessing their damages for the detention of the ice at $800; also finding that the ice had been disposed of by the plaintiff, and, consequently, could not be returned to the defendants. Judgment was thereupon rendered in favor of the defendants for the value of the ice, and the amount of the damages so fixed and assessed respectively.

It was shown by the evidence, that for some years previous to, and during the summer of 1876, Jacob C. Geisendorff, the husband of the plaintiff, was the owner of the lake, or reservoir, near Rome City, and of some adjoining lands, upon which he had erected a block of ice-houses, five in number, and which he had, during the winter of 1874 and 1875, filled with ice; that at the time of putting the ice into the ice-houses, and subsequently, he was indebted to the plaintiff in a sum probably exceeding $10,000 for moneys derived from her separate estate and by him appropriated from time to time to his own use; that, on the 9th day of February, 1876, the said Jacob C. Geisendorff, who then resided at the city of Indianapolis, estimating his indebtedness to the plaintiff at the sum of $11,000, obtained from her a release in writing, and in consideration of such release executed to her a bill of sale, purporting to sell, convey, and transfer to her all the ice in the five ice-houses above named; that the defendant John C. Hall, on the 13th day of October, 1875, had recovered a judgment in the superior court of Marion county against said Jacob C. Geisendorff for $3,031.75 and costs of suit; that the defendant Mary. Haughton had, on the 16th day of November, 1875, recovered a judgment in the same court against the said Jacob C. Geisendorff for $583.33 and like costs of suit; that, in June, 1876, executions were issued on these judgments directed to the defendant Eagles, as sheriff of the said county of Noble, who, on the 10th day of July, 1876, levied the same on the ice in the three most northernly ice-houses of the block of five ice-houses herein above referred to; that, on the 21st day of the last named month, the plaintiff commenced this action to recover possession of the ice thus levied upon, and by the execution of a bond obtained such possession; that she thereafter, with the assistance of her husband and one Teal and others, proceeded to sell and dispose of the ice, mostly by shipment to distant markets.

The plaintiff, while testifying as a witness in her own be-

half, stated that after she purchased the ice in the five ice-houses, she authorized her husband and one McCurdy, his son-in-law, to take possession of the ice for her, as her agents.

McCurdy testified that in the early part of the year 1876 he was a practicing lawyer, and resided at Indianapolis; that he wrote the release which the plaintiff executed to her husband, and the bill of sale for the ice which he in turn executed to her, herein above respectively referred to, and that in that business he acted as the attorney of both parties; that by mutual request of the parties he took charge of both the release and the bill of sale, and put them in his safe for safe-keeping, and had thereafter continued in the possession of those papers; that in March, 1876, a few weeks after the papers in question were executed, the defendant Hall was in the city of Indianapolis for a short time; that while there he, witness, and Jacob C. Geisendorff had a conversation with him, Hall.   Counsel for the defendants then, over the plaintiff's objection, asked McCurdy the following question: " Did you at that time disclose to Mr. Hall that Mrs. Geisendorff had an interest in the ice at Rome City?"  To which McCurdy answered: " I do not recollect of saying anything to Mr. Hall about Mrs. Geisendorff's ownership of the ice." In the absence of any evidence as to the subject-matter of the conversation referred to, no sufficient foundation was laid for the question thus addressed to McCurdy; but in view of the collateral and merely incidental character of the inquiry, and the entirely indefinite nature of McCurdy's answer, we regard the admission of the question as a purely technical, and practically harmless, error.

McCurdy and one Thalman were, also, permitted to severally testify, over objection, to the financially embarrassed condition of Jacob C. Geisendorff at the time he assumed to sell and transfer the ice in controversy to the plaintiff, and a question was reserved upon the admission of that evidence.

In attacking the good faith of a sale or conveyance of prop-

erty, it is always competent to show that the vendor or grantor was in embarrassed circumstances when the sale or conveyance was made.

Bump, in his work on Fraudulent Conveyances, at page 591, says : " Evidence of the condition and acts of the parties at and about the time of the transfer is competent, for it serves to show the reasonableness of their conduct and to throw light upon their motives. It may be shown that the grantor was indebted, or intoxicated, or reputed to be in embarrassed circumstances, or that suits were pending against him, or that he subsequently became insolvent."

It follows that the evidence as to Jacob C. Geisendorff's embarrassed financial condition at the time indicated was properly admitted.

Teal, who had much to do with handling and shipping the ice after the plaintiff claimed to have purchased it, and who was also made a witness in the cause, was first asked some questions in reference to shipments, as well as to the value of the ice. The court then, upon its own motion, and over objections interposed by counsel for the plaintiff, asked Teal a question, as follows : " You may state what the ice levied upon by the sheriff was worth in the houses, with the right to continue it in the houses for a reasonable time, such reasonable time meaning until the purchaser of the ice could obtain and find a purchaser and a market for the ice?" Teal answered that " under such circumstances the ice in the three houses was worth $1,500," but added, that if the purchaser would have had only time to get the ice out of the houses and put it on the cars, it might not have brought more than $500 or $1,000.

It is claimed that the question thus asked of Teal carried with it the implication that if the ice had been sold at sheriff's sale the purchaser would have had a reasonable time in which to have made suitable arrangements for disposing of the ice, and for removing it from the houses, and that inasmuch as the purchaser would not have had such a reasonable

time, but might have been required to remove the ice immediately, the question was a misleading and improper one. In the first place, the question was only a hypothetical one, and called for, as it only elicited, a hypothetical answer, under circumstances which may have tended in some degree to test the accuracy of the witness' judgment as to the value of the ice. In the next place, we think that a purchaser at sheriff's sale would, in the very nature of things and upon the plainest principles of justice, have had a reasonable time in which to make suitable arrangements and to remove the ice from the houses. In the third place, the answer of the witness, when compared with much of the other evidence in the cause, was seemingly most favorable to the plaintiff, and hence, presumably, she was not injured either by the question or the answer.

It is next claimed that the damages were excessive. There was uncontradicted evidence tending to prove that the plaintiff realized near, if not quite, the gross sum of $7,000 for the ice levied upon by the sheriff. *Suydam* v. *Jenkins*, 3 Sandford, 614.

There was also evidence tending to prove that the ice was worth as much at least as she obtained for it; also that there was the usual waste in handling and shipping the ice after the plaintiff came into the possession of it under her replevin bond. Under such circumstances no sufficient reason is afforded us for holding that the damages were assessed at too great a sum.

It is lastly claimed that the finding was not sustained by sufficient evidence. The indebtedness of Geisendorff, the husband, to the plaintiff at, and previous to, the time at which he executed to her a bill of sale for the ice, was very clearly and satisfactorily established, but there was evidence tending to impeach the good faith of the alleged sale of the ice. No visible change of possession followed, and everything relating to the ice continued thereafter apparently as before. The plaintiff made no public claim of ownership until the ice was

was levied upon by the sheriff. Other circumstances of equal significance might be enumerated. It is sufficient to say that upon the whole case the finding was fairly well supported by the evidence.

The judgment is affirmed, with costs.

ZOLLARS, J., did not participate in the decision of this cause.

Filed March 24, 1886.