THOMAS S. BEACH *et al.*

*v.*

JOSEPH F. MILLER.

*Filed at Ottawa October 31, 1889.*

1. CORPORATIONS—*director dealing with corporation.* A director of a solvent corporation may deal with the same, and may loan it money and take security therefor, or buy property of it, in like manner as a stranger.

2. SAME—*director as a creditor—of his relation to the corporate fund—and to other creditors.* So long as a corporation remains solvent, its directors are trustees for its stockholders; when the corporation becomes insolvent, the assets will be regarded as a trust fund for the payment of its creditors, and the directors will occupy the position of trustees for the creditors, and they may be prohibited from purchasing the trust property whereby to secure to themselves any advantage over other creditors.

3. As the directors of an insolvent corporation are trustees of its funds for the creditors, they can not give them away, or use them to exonerate themselves, to the injury of the other creditors. If any of the directors are creditors of the corporation, they can not secure any advantage or preference in the payment of their claims at the expense of other creditors.

4. A director who purchases the property of an insolvent corporation for the purpose of securing his own debt, and takes possession thereof, will take such property charged with the trust in favor of the other creditors, which may be enforced in a court of equity. But this will not authorize another judgment creditor to levy his execution thereon for his debt, after the property has passed into the possession of such director under his purchase.

5. SAME—*former decisions.* In the case of *Merrick* v. *Peru Coal Co.* 61 Ill. 479, the question of the power of a director to purchase property of or deal with an insolvent corporation, did not arise, and what was there said on that subject was mere *obiter dictum.* And in *Harts et al.* v. *Brown et al.* 77 Ill. 226, the expression, that a director may trade with, borrow from or loan money to the company of which he is a member, on the same terms and in like manner as other persons, was not authorized by the case made by the record.

6. SAME—*ratification of sale without authority.* Where a sale of property of an incorporated company is made by its president or other officer to a creditor, in payment of the company's notes, without any

order therefor by the board of directors, even if the sale is invalid on that ground, the retention of the notes by the board will amount to a ratification of the sale.

7. SAME—*sale of corporate property to a director—whether fraudulent—evidence on that question.* Where a sale of its personal property by a corporation to one of its directors, in payment of a debt due him for money loaned by him to the company, is attacked, as being made in fraud of creditors, evidence on the part of the creditors that the company was at the time of the sale insolvent, and that about the same time the company made a mortgage upon its real estate in favor of three of its directors for a large sum, and turned over $1000 of its accounts to a bank, to apply on a debt from it secured by three of its directors, and had sold all the product of its manufacture on hand, is admissible on the issue of fraud, as tending to show fraud.

8. If, at the time the sale was made to the director, the corporation was insolvent, or if, at or about the time when the sale was made, large mortgages were placed on all the property owned by the corporation, so that it had no property left liable to execution, these were facts proper for the consideration of the jury on the question whether the sale was fraudulent or made in good faith. When the good faith of a sale of property is attacked, it is always competent to prove that the vendor was embarrassed or insolvent.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Whiteside county; the Hon. JOHN V. EUSTACE, Judge, presiding.

Messrs. WEIGLEY, BULKLEY & GRAY, for the appellants:

Any act, either of a corporation or any of its officers, inconsistent with its charter, is void. *Abbott* v. *Hard Rubber Co.* 33 Barb. 578; *Railway Co.* v. *Bowser,* 49 Pa. St. 29; *Rollins* v. *Clay,* 33 Me. 132; *Cass* v. *Iron and Steel Co.* 9 Fed. Rep. 640; *Polar Star Lodge* v. *Polar Star Lodge,* 16 La. Ann. 53.

The property of a corporation is a trust fund for the payment of its debts. *Gordon* v. *Canal Co.* 18 Ohio St. 169; *Wood* v. *Dummer,* 3 Mason, 308; *Railway Co.* v. *Bee,* 48 Cal. 398; *Duery* v. *Corp,* 7 Wall. 299; *Hastings* v. *Drew,* 76 N. Y. 9.

The directors are the trustees of that fund for the benefit of, first, creditors, and second, stockholders. *Butts* v. *Wood,* 38 Barb. 181; 37 N. Y. 317; *Jackson* v. *Ludeling,* 21 Wall.

616; Field on Corp. sec. 154; *Bliss* v. *Matteson*, 45 N. Y. 22; 52 Barb. 348; *Holder* v. *Railway Co.* 71 Ill. 106; *Chetlain* v. *Life Ins. Co.* 86 id. 220.

A director can not deal with the corporation as an individual in any matter when his personal interest is or may be antagonistic to that of the *cestui que trust.*  *Railway Co.* v. *Blaikee*, 1 Macq. 461; *Steel and Coal Co.* v. *Coal and Iron Co.* 16 Md. 456; *Conro* v. *Iron Co.* 12 Barb. 27; *Pickett* v. *School District*, 25 Wis. 551; *Coal and Iron Co.* v. *Sherman*, 30 Barb. 553; *Ogden* v. *Murray*, 39 N. Y. 202; *Railway Co.* v. *Dewey*, 14 Mich. 477; *Hoyle* v. *Railroad Co.* 54 N. Y. 314; *Koehler* v. *Iron Co.* 2 Black, (N. S.) 715; *Post* v. *Russell*, 36 Ind. 60; *Coleman* v. *Railroad Co.* 38 N. Y. 201; *People* v. *Township, etc.* 11 Mich. 222; *Brewster* v. *Strattman*, 4 Mo. App. 41; *Hawley* v. *Cramer*, 4 Cow. 717; *Van Epps* v. *Van Epps*, 9 Paige, 237; *Bliss* v. *Matteson*, 52 Barb. 348.

Such action may be treated by the *cestui que trust* as void. *Michoud* v. *Girod*, 4 How. 503; *Nathan* v. *Whitlock*, 9 Paige, 152; *Harts* v. *Brown*, 77 Ill. 226.

Evidence of the insolvency of the corporation was proper. It is only after establishing insolvency that the creditor can introduce evidence tending to show a fraudulent transfer of the debtor's property.  *Griffith* v. *Cox*, 79 Ky. 562; *Towle* v. *Lamphere*, 8 Bradw. 379; *Bank* v. *Meed*, 92 N. Y. 637; *Robinson* v. *First M. E. Church*, 57 Iowa, 717; *Bishop* v. *State*, 83 Ind. 67.

To show fraud, it is competent to show what had been the prior business dealings between the parties, and the debtor's acts and declarations.  *McKinnon* v. *Land Co.* 63 Texas, 30; *Elliott* v. *Stoddard*, 18 Mass. 145; *Rosenthal* v. *Walker*, 111 U. S. 185; *Strauss* v. *Kranert*, 56 id. 254.

Messrs. BENNETT & GREEN, for the appellee:

The appellants, in all the different items of proof offered, and rejected by the court, offered nothing that even pretended

to prove any actual fraud in the sale to Miller; and the insolvency of the debtor at the time of a sale of property to a creditor, made in good faith and for full value, to pay an honest debt, would be no evidence of fraud. *Nelson* v. *Smith,* 28 Ill. 495; *Morris* v. *Tillson,* 81 id. 607; Bump on Fraud. Con. 44, 183.

A corporation may sell portions of its property at a full price to pay an honest debt to a shareholder or director, even though it should turn out that the corporation had not enough property to pay all its debts in full. Thompson on Liability of Officers and Directors, 401; *Buel* v. *Buckingham,* 16 Iowa, 291; *Railroad Co.* v. *Cleghorn,* 1 Spear's Eq. 535; *Sargent* v. *Webster,* 13 Metc. 505; *Life Ins. Co.* v. *Page,* 17 B. Mon. 412; *Merrick* v. *Peru Coal Co.* 61 Ill. 479; *Harts* v. *Brown,* 77 id. 226; *Reichwald* v. *Hotel Co.* 106 id. 440.

Though a member of a corporation be also a trustee or a director, he will not be incapacitated from dealing with it. Angell & Ames on Corp. sec. 233; 1 Potter on Law of Corp. 412; *Whitewell* v. *Warner,* 20 Vt. 425; *Haywood* v. *Pilgrim Sec.* 21 Pick. 270; *Smith* v. *Lansing,* 22 N. Y. 526.

A corporation may prefer a director who is also a creditor. Bump on Fraud. Con. 185; *Sargent* v. *Webster,* 13 Metc. 505; *Railroad Co.* v. *Cleghorn,* 1 Spear's Eq. 535.

Even if it be held that a director can not obtain a preference over other creditors by a purchase or taking security, when the corporation, although carrying on its usual business, is in fact insolvent, that question can only be raised, in equity, by a creditor, by a bill to compel the director to pay over the excess taken by him beyond his proper proportion of the corporate assets. The cases cited in Morawetz on Private Corp. (1st ed.) under sec. 582, *Richards* v. *Insurance Co.* 43 N. H. 263, *Bradley* v. *Farwell,* 1 Holmes, 433, and *Smith* v. *Lansing,* 22 N. Y. 521, were all suits in equity. In the *Bradley case,* the reasoning is, that equity, and equity only, would have jurisdiction in such a case.

In a case like this, where the purchaser was in possession of the property under a sale made by the president and secretary of the corporation, the presumption would be, when such possession was attacked by a third person, that the officers were properly authorized. *Ryan* v. *Dunlap,* 17 Ill. 40; *Singer Manf. Co.* v. *Holdfodt,* 86 id. 455; *Building Society* v. *Crowell,* 65 id. 453; *Bradley* v. *Ballard,* 55 id. 413; Angell & Ames on Corp. sec. 297.

Whether there was any original authority from the board of directors to make the sale and lease or not, if the corporation, with full knowledge of the sale and lease, received the notes, cancelled the same, and retained them, such acts would amount to a ratification. *Burrell* v. *Bank,* 2 Metc. 163; 35 Am. Dec. 395; *Merchants' Bank* v. *Central Bank,* 1 Ga. 418; 44 Am. Dec. 665; *Bank* v. *Comegys,* 12 Ala. 772; 46 Am. Dec. 278; *Railroad Co.* v. *Thompson,* 103 Ill. 188; *Reichwald* v. *Hotel Co.* 106 id. 439; *Ward* v. *Williams,* 26 id. 447; *Sheldon Hat Blacking Co.* v. *Eichmeyer H. B. Co.* 90 N. Y. 607; Angell & Ames on Corp. sec. 240.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was an action of trespass, brought by Joseph T. Miller, in the circuit court of Whiteside county, against Thomas S. Beach and George C. Keefer. The declaration contained four counts. In the first and second it is alleged, that defendants, with force and arms, broke and entered two certain rooms in a certain warehouse, known as the warehouse of the Rock River Packing Company, which said rooms were then and there in the possession of the plaintiff. The third and fourth counts are trespass *de bonis asportatis,* for taking and carrying away 94,612 tomato cans, 3516 sheets of tin, and a few other articles, alleged to belong to the plaintiff. The defendants pleaded the general issue and several special pleas, in which they averred, that on the 23d day of October, 1885, E. W.

Blatchford & Co. recovered a judgment against the Rock River Packing Company, in the circuit court of Whiteside county, for $1415.40; that an execution issued on the judgment, which was placed in the hands of defendants, as sheriff and deputy sheriff, to collect. It is also alleged that the goods named in the declaration belonged to the Rock River Packing Company, and as such they were levied upon by defendants, under and by virtue of the execution, and sold in satisfaction thereof. Issue was formed on the pleas, and on a trial the plaintiff recovered a judgment for $1996.41, which was affirmed in the Appellate Court.

In order to get a correct understanding of the questions presented by the record, a brief statement of the facts seems to be required. The Rock River Packing Company is a corporation, organized in 1881, with a capital stock of $16,000, the incorporators being James A. Ingersoll, Edward H. Sears, William N. Herman, and Joseph T. Miller, the plaintiff here. The corporation was formed for "packing, pickling, canning and bottling of meats, vegetables and fruits, and dealing in the same," and was located at Sterling, where it provided itself with a factory and warehouse, in which its business was transacted. During the spring and summer of 1885 the corporation borrowed of Miller, who was then a director, money to be used in its business, amounting to the sum of $2000. To secure Miller for the money loaned, the corporation executed and delivered to him its four judgment notes, one dated May 30, 1885, amount $500; one July 6, 1885, amount $500; and one for $1000, on August 17, 1885. On the 16th day of October, 1885, these notes being due and unpaid, the president and secretary of the corporation sold Miller 80,000 cans and a small quantity of tin for $1877, to be applied as a payment on the notes. On the same day, Ingersoll, president and secretary of the corporation, leased Miller two small rooms in the north end of the company's warehouse. On the morning of the 17th, all property belonging to the company

was removed from the two rooms, and the possession was turned over to Miller. Miller placed the goods purchased in the rooms, and nailed up the doors communicating with other parts of the warehouse, and placed new locks on the other doors. On the 17th day of October, 1885, the corporation delivered to E. W. Blatchford & Co. a judgment note for $1415.40, upon which judgment was entered. On the 23d day of October an execution issued on the judgment, and on the 24th, defendant Beach, as sheriff, and defendant Keefer, as deputy sheriff, levied on the goods which had been purchased by Miller.

In the circuit court it was contended that the sale of the goods from the Rock River Packing Company to Miller was fraudulent as against creditors, and being fraudulent, the goods were liable to be seized and sold by the sheriff on the execution in favor of Blatchford & Co., against the Rock River Packing Company. For the purpose of showing the sale fraudulent, the defendants offered to prove that the Rock River Packing Company was, at the time of the sale, insolvent; that on the 16th day of October, 1885, the company executed a mortgage on its real estate for $7000, to three of its directors; that the company turned over $1000 of its accounts to the Sterling National Bank, to apply on a debt due from the company to the bank, which debt was secured by three of the directors of the company; that between the 16th and the 23d days of October, the corporation sold the product of their manufacture to a certain party in Chicago. This offered evidence, and other evidence of a like import, was ruled out by the court, and the decision is relied upon as error. We are of opinion that the court erred in excluding this evidence from the jury. If, at the time this sale was made, the corporation was insolvent, or if, at or about the time when the sale was made, large mortgages were placed on all of the property owned by the corporation, so that it had no property left liable to execution, these were facts proper for the consideration of the jury on the

question whether the sale to Miller was fraudulent or made in good faith. What weight should be given to this character of evidence, was a question for the jury. We only determine that it was competent evidence for the consideration of the jury, on the issue presented by the pleadings. Where the good faith of a sale of property is attacked, it is always competent to prove that the vendor was embarrassed or insolvent. *Geisendorf* v. *Eagles,* 106 Ind. 38 ; Bump on Fraud. Con. 591.

But appellants rely upon another ground to defeat the sale, —that it was void for the reason that Miller was, at the time, a director of the corporation, and could not contract with it. This proposition is discussed in the argument under several distinct heads, and various authorities have been cited in its support. There is a conflict of authority on this question, but on the general proposition, whether a director may deal with the corporation, we think the weight of authority is that he may. This court so held in *Merrick* v. *Peru Coal Co.* 61 Ill. 479, and in *Harts et al.* v. *Brown et al.* 77 id. 226. The Supreme Court of the United States hold the same doctrine. In *Twin-Lick Oil Co.* v. *Marbury,* 91 U. S. 587, it is said : "It is very true that as a stockholder, in making a contract of any kind with the corporation of which he is a member, he is in some sense dealing with a creature of which he is a part, and holds a common interest with the other stockholders, who, with him, constitute the whole of that artificial entity, and is properly held to a larger measure of candor and good faith than if he were not a stockholder. So when the lender is a director, charged, with others, with the control and management of the affairs of the corporation, representing, in this regard, the aggregated interest of all the stockholders, his obligation, if he becomes a party to a contract with the company, to candor and fair dealing, is increased in the precise degree that his representative character has given him power and control, derived from the confidence reposed in him by the stockholders who appointed him their agent." See, also, the following au-

thorities, where the same doctrine is announced: Angell &
Ames on Corp. sec. 233; *Whitehall* v. *Warner*, 20 Vt. 425;
*Smith* v. *Lansing*, 22 N. Y. 526; *City of St. Louis* v. *Alexander*,
23 Mo. 483.

While a corporation remains solvent, we perceive no reason
why a director, with the knowledge of the stockholders, may
not deal with the corporation, loan it money, take security or
buy property of it, in like manner as a stranger; but whether
a director in an insolvent corporation may purchase the assets
in payment of a debt, and thus secure a preference over other
creditors, presents a different question. So long as a corpo-
ration remains solvent, its directors are agents or trustees for
the shareholders. They owe no duties or obligations to others.
But the moment a corporation becomes insolvent, its directors
occupy a different relation. The assets of the corporation
must then be regarded as a trust fund for the payment of all
its creditors, and the directors occupy the position of trustees,
and, a fiduciary relation then existing, they may, with pro-
priety, be prohibited from purchasing the trust property. The
relation that directors occupy to the property of a corporation
is well stated in *Ogden* v. *Murray*, 39 N. Y. 202, as follows:
"The appellants and their associates were not in a situation
permitting them to secure to themselves a personal advantage
in the matter. The stockholders and creditors were entitled,
not only to their vote in the board, but to their influence and
argument in the discussion which led to the passage of the
resolution in pursuance of which they took title as trustees.
This brings the case within the rule which rests in the sound-
est wisdom, and is sustained by the best consideration of the
infirmities of our human nature, and called for by the only
safe protection of the interests of *cestuis que trust* or benefi-
ciaries, viz., that trustees and persons standing in similar
fiduciary relations shall not be permitted to exercise their
powers, and manage or appropriate the property of which they
have control, for their own profit or emolument,—or, as it has

been expressed, shall not take advantage of their situation to obtain any personal benefit to themselves at the expense of their *cestuis que trust.*" See, also, *Drury* v. *Cross,* 7 Wall. 299.

In *Curran* v. *State of Arkansas,* 15 How. 307, Mr. Justice CURTIS, delivering the opinion of the court, speaking of an insolvent banking corporation, says: "The assets of such a corporation are a fund for the payment of its debts. If they are held by the corporation itself, and so invested as to be subject to legal process, they may be levied on by such process. If they have been distributed among stockholders, or gone into the hands of others not creditors or purchasers, leaving debts of the corporation unpaid, such holders take the property charged with the trust in favor of the creditors, which a court of equity will enforce, and compel the application of the property to the satisfaction of their debts. This has often been decided, and rests upon the plainest principles."

In *Richards* v. *New Hampshire Ins. Co.* 43 N. H. 263, on a bill in equity filed by creditors, it was held, that directors and managers of insolvent corporations are trustees of the funds for the creditors, and are bound to apply them *pro rata,* and can not use them to exonerate themselves, to the injury of other creditors. It is there said: "Every agent and trustee who has claims of his own must be regarded as agent for himself and others, and bound to give his diligence and care equally to all the claims in his hands, and consequently to apply all moneys paid to him, without an appropriation by the debtor, to the payment of all claims in his care, whether of his own or others, in just proportions to their amounts."

In Morawetz on Corporations, (1st ed.) sec. 579, it is said: "It is the duty of the directors, and other agents of an insolvent corporation, to preserve its assets for the benefit of creditors. The legal ownership of the assets is not altered by insolvency, and the regular agents of the company retain the same powers of management with which they were originally invested. But upon the insolvency of the corporation, the

equitable lien of creditors attaches upon all of the company's assets; and the directors, who originally stood in a fiduciary relation to the company's members, become placed in a fiduciary relation to its creditors. Accordingly, it has been held * * * that they can not give away the company's property gratuitously, or sell it at a sacrifice in the interest of others, even with the consent of the stockholders; and if themselves creditors, they can not receive any advantage or preference in the payment of their claims, at the expense of other creditors."

In *Haywood* v. *Lincoln Lumber Co. et al.* 64 Wis. 639, where an action was brought to foreclose a mortgage given by the company to its directors to secure an indebtedness due from the company to them, on the hearing it appeared that at the time the mortgage was executed the company was insolvent, and it was insisted as a defense, that the mortgage was invalid. The court, in deciding the case, said: "The main question is the validity of the mortgage in suit. There was abundant evidence to justify the finding of the circuit court that at the time it was given the company was insolvent. In such case the authorities seem to be uniform that the directors and officers of a corporation are trustees of the creditors, and must manage its property and assets with strict regard to their interests; and if they are themselves creditors, while the insolvent corporation is under their management they can not secure to themselves any preference or advantage over other creditors. The directors are then trustees of all the property of the corporation for all its creditors, and an equal distribution must be made, and no preference to any one of the creditors, and much less to the directors or trustees, as such." See, also, *Post* v. *Russell*, 36 Ind. 60, and *Lippincott* v. *Shaw Carriage Co.* 21 Fed. Rep. 577.

The language used in *Merrick* v. *Peru Coal Co. supra*, is broad enough to authorize a director of an insolvent corporation to deal with the corporation; but the question of the power of a director to purchase property of or deal with an

insolvent corporation did not arise in that case, and what was
said was mere *obiter dictum.* There, the Peru Coal Company,
a corporation, executed certain notes payable to the Michigan
Car Company, and also drew certain drafts in favor of the
company. These notes and drafts were purchased by Merrick,
who was an officer of the corporation, with his own funds, and
brought an action on the notes and drafts, and the only ques-
tion was, whether he was entitled to recover, and the court
properly held he might recover upon the notes and drafts.

*Harts et al.* v. *Brown et al.* 77 Ill. 226, is another case where
expressions may be found similar to those used in the *Merrick
case*, which were not justified by the questions presented for
decision. That was a bill brought by stockholders to vacate
a sale under a trust deed given by the company to secure the
payment of certain bonds issued by the company and sold to
one of the directors. The question arose whether the company
had the power to execute a trust deed, and whether it could
borrow money of a director. It was held that the charter
conferred power to borrow money and secure it by mortgage
or deed of trust, and that the board of directors might borrow
money of one of its members. The question before the court
was properly decided, but the expression, that a director may
trade with, borrow from or loan money to the company of
which he is a member, on the same terms and in like manner
as other persons, was not authorized by the case made by the
record.

After a careful examination of the authorities, we are in-
clined to the opinion, that if this corporation was insolvent
at the time of the sale, Miller, who was a director, could not
lawfully purchase the property in satisfaction of his own debt
to the exclusion of other creditors, but he took the property
charged with the trust in favor of other creditors, which may
be enforced in an appropriate action. Miller, being a creditor,
would doubtless be entitled to share with the other creditors in
the property, but he could not appropriate the entire amount

to the payment of his own debt. This, however, conferred no right upon appellants to seize the property, and sell it in satisfaction of the debt of Blatchford & Co. As creditors of the corporation they occupied no better position than Miller. It may be, and no doubt is, true, that if Blatchford & Co. had levied on the property while in the hands of the corporation, before the sale to Miller, they would, under such circumstances, have been entitled to hold it. But after the sale and delivery to Miller they had no such right,—the property had passed beyond the reach of their execution. It had passed into Miller's hands charged with a trust which a court of equity might enforce in favor of all the creditors of the corporation, or such as might invoke the aid of that court.

One other question remains to be considered. The sale was made to Miller without an order of the board of directors of the corporation, and upon this ground it is claimed to be invalid. Conceding that the sale was irregular, we think it might be ratified by the corporation, and the fact that it took up the notes held by Miller, and cancelled them, and retained them in its possession, may be regarded as a ratification of the sale. As to the lease of that part of the building where the goods were stored, whether it was strictly valid or invalid was of no moment. The only purpose of the lease was to give Miller possession of that part of the building, and there was ample evidence to establish possession independent of the lease.

For the error indicated, the judgments of the Appellate and circuit courts will be reversed, and the cause remanded.

*Judgment reversed.*

Mr. JUSTICE BAKER, having passed upon this case in the Appellate Court, took no part in its consideration here.