(February 1, 1893.)

# FERBRACHE v. MARTIN.

### [32 Pac. 252.]

BILL OF SALE—ADMISSIBILITY OF AS EVIDENCE.—A bill of sale made and executed on the twenty-third day of June, 1890, cannot be introduced in evidence unless it complies with the act of February 7, 1889 (15th Sess. Laws, p. 49), in that it must be acknowledged before a notary public, or other officer authorized to take acknowledgments, and must be recorded in the office of the county recorder in the same manner as a deed.

TRANSFER OF PERSONAL PROPERTY—FRAUD.—Where fraud is alleged in a transfer of personal property, and that it was transferred for the purpose of defrauding, delaying or hindering creditors, and facts appear in the evidence which have a strong tendency to sustain such allegation, much latitude is allowed in the examination of the parties to the transfer, and others in any wise connected with the affair.

SAME.—The acts or declarations of a party to a fraudulent transfer of property are admissible in evidence, though he is not a party to the suit, and though not made in the presence of the party claiming to be the purchaser of the property.

(Syllabus by the court.)

APPEAL from District Court of Kootenai County.

Charles L. Heitman and Albert Hagan, for Appellant.

Section 19 of the Laws of Idaho, approved February 7, 1889, is as follows: "It shall be unlawful for any person in this territory to sell any head of livestock without giving a written bill of sale therefor. And it shall be unlawful for any person in this territory to purchase any head of livestock without receiving a bill of sale therefor. Such bill of sale shall contain a full description of all marks, brands, or either, on such livestock, and must be witnessed by two reputable citizens of the territory, acknowledged before a notary public or an officer authorized to use a seal, and must be recorded in the office of the county recorder in the same manner that deeds are recorded." (Laws 1889, p. 49.) Declarations and acts of a party to the fraud are admissible, though not a party to the action. (*Mamlock v. White,* 20 Cal. 592; *La Fitte v. Rups,* 13 Colo. 207,

22 Pac. 309; 1 Greenleaf on Evidence, sec. 190.) The acts of all debtors charged with the execution of a conveyance for the purpose of defrauding creditors made in the absence of the grantee are admissible to prove such fraudulent purpose, and the grantee's knowledge of such fraudulent purpose may be shown by any circumstance tending to show participation in the designs of the debtor. (8 Am. & Eng. Ency. of Law, 778; notes to *Holms v. Braidwood,* 82 Mo. 610.) Fraud may be inferred from circumstances without express proof. (*Penkitt v. Polach,* 17 Cal. 327; *Butler v. Collins,* 12 Cal. 458.) It is not necessary to show that the fraudulent intent constituted the sole purpose, but that it constituted a part of the purpose and design. (Waite on Fraudulent Conveyances, secs. 196, 197.) Such facts as will awaken suspicion and lead a man of ordinary prudence to make inquiries make the vendee chargeable with the knowledge of the fraudulent intent, and with participation in the fraud. (*Gollober v. Martin,* 33 Kan. 252, 6 Pac. 267; *McDonald v. Gaunt,* 30 Kan. 693, 2 Pac. 871; *Wells v. McMahon,* 3 Wash. Ter. 532, 18 Pac. 73.) Where the evidence of the fraud is circumstantial and presumptive, it is error to refuse a construction as to the necessity in most cases of relying upon such evidence to prove fraud. (*Sukeforth v. Lord, supra; Gollober v. Martin,* 33 Kan. 252, 6 Pac. 267; *McDonald v. Gaunt,* 30 Kan. 693, 2 Pac. 271; *Wells v. McMahon,* 3 Wash. Ter., 18 Pac. 73.)

R. E. McFarland, for Respondent.

In arguing this case we shall notice only one point raised by counsel for defendant, viz., the sufficiency of the evidence; for notwithstanding the fact that counsel's statement contains fifteen or more assignments of error, we are constrained to believe that they rely almost solely upon the ground that the evidence was insufficient to sustain the verdict. The evidence is so plain and positive that we deem it absolutely unnecessary to cite any authorities.

MORGAN, J.—This is an action brought by the plaintiffs to recover from the defendant the sum of five hundred dollars ($500) damages, alleged to have been suffered by plaintiffs

by reason of the conversion, by the defendant, of two mules described in the complaint, and claimed by the plaintiff, Hannah Ferbrache, as her property. The complaint alleges that the said two mules were worth two hundred and fifty dollars ($250) each, and that the plaintiff, by reason of such conversion, was damaged in the sum of five hundred dollars ($500). The defendant's answer sets up that at the time of the said alleged conversion, he was the sheriff of Kootenai county, and that on the third day of July, 1890, an action was commenced by John H. Stone against the firm of Ferbrache Brothers, in the district court of the first judicial district of the state of Idaho, in and for the county of Kootenai, to recover the sum of nine hundred and ninety dollars and nineteen cents ($990.19), alleged to be due to said John H. Stone from said Ferbrache Brothers, and that on said day a summons and a writ of attachment in said action were issued from said district court, and duly served upon Lincoln Ferbrache, a member of the firm of Ferbrache Brothers, by the defendant, as sheriff of Kootenai county, and that on the fourth day of July, 1890, the defendant, as aforesaid, levied upon the said mules in controversy in the action at bar, and attached them in behalf of the said John H. Stone. That on the fourth day of August, 1890, judgment by default was entered in said action against said Ferbrache Brothers, in favor of John H. Stone, for the sum of nine hundred and ninety dollars and nineteen cents ($990.19), and that on the eighth day of August, 1890, an execution was issued out of said district court, in said action, and placed in the hands of the defendant as sheriff as aforesaid, for service, and that the defendant, by virtue of said writ of execution, on the eighth day of August, 1890, levied upon all the right, title and interest of the said Ferbrache Brothers in the said mules; and the said sheriff, after duly advertising, on the eighteenth day of August, 1890, sold the said mules at public auction to satisfy the said execution, at which sale said John H. Stone became the purchaser of the said mules for the sum of three hundred dollars.

Defendant denies ownership or possession in plaintiffs, and alleges that the plaintiff, Hannah C. Ferbrache, claimed title to said mules by virtue of a pretended bill of sale executed by

Ferbrache Brothers to the plaintiff, and given about the time of the institution of the action against them by said Stone; and alleges, further, that the pretended bill of sale was made without any consideration, that Ferbrache Brothers were insolvent at the time of the execution of the said pretended bill of sale; that the bill of sale was made with the intention to hinder, delay and defraud the creditors of said Ferbrache Brothers, and especially said Stone.

The case was tried by a jury, which resulted in a verdict for the plaintiff for three hundred dollars. A motion for a new trial was made, upon a statement of the case, which was denied, and the defendant appeals both from the judgment, and the order overruling the motion for a new trial.

The plaintiffs introduced a bill of sale, executed on the 23d of June, 1890. The bill of sale was admitted in evidence over the objection of the defendant, which is assigned for error. Section 19 of the Laws of Idaho, 15th Session, page 49, provides: "That it shall be unlawful for any person in this territory to sell any head of livestock without giving a written bill of sale therefor, and it shall be unlawful for any person in this territory to purchase any head of livestock without receiving a bill of sale therefor; such bill of sale shall contain a full description of the marks and brands or either on said livestock, and must be witnessed by two reputable citizens of the territory, and acknowledged before a notary public, or other officer authorized to use a seal, and must be recorded in the office of the county recorder in the same manner that deeds are recorded." This act was approved February 7, 1889, and was repealed March 3, 1891, and was therefore in force at the time of the execution of this bill of sale.

The bill of sale does not comply with the requirements of this act in any respect, except that it was in the ordinary form, and was witnessed by two citizens. It was not, however, acknowledged before a notary public or any other officer authorized to take acknowledgments, nor was it recorded in the office of the county recorder in the manner required by this act. It was therefore not admissible as evidence tending to prove the sale was transfer of this property, and to admit it for such purpose was error.

The next specification of error which it is necessary to notice was the refusal of the court to permit a series of questions to be propounded to R. L. Ferbrache, a member of the firm of Ferbrache Brothers, and one of the parties to the bill of sale which was alleged by the defendant to be fraudulent, and made for the purpose of defrauding the creditors of said firm, as follows, to wit: "What other teams did you own besides these two? Did you not go down and make a bargain with Mr. Jacobs about these two teams of mules?" Meaning the team in controversy and one transferred at another time. "What was Jacobs to pay you for those mules? Did you not tell Mr. Stone that you had on May 1, 1890, so many thousand ties, and that you had three teams, and asked him if he would sell you two wagons? Did you not propose to John Lyons that you would turn over to him a team if he would help you beat Stone?" All of which questions were rejected by the court upon objection, to which ruling the defendant then and there excepted.

It appears from the evidence that one of the teams claimed to have been sold to Hannah C. Ferbrache by Ferbrache Brothers was afterward sold to one Jacobs by R. L. Ferbrache, a member of the firm of Ferbrache Brothers, by whom it was taken out of the state. Hannah C. Ferbrache, to whom these teams were claimed to be sold, was the mother of the boys who comprised the firm of Ferbrache Brothers. This evidence was rejected on the ground that the conversations that were proposed to be proven were not had in the presence of the plaintiff. The acts or declarations of a party to a fraud are admissible, though he is not a party to the suit, and though not made in the presence of the party claiming to be the purchaser of the property.

George W. Jacobs, being examined on the part of the defendant, testifies as follows: "About the Fourth of July, 1890, R. L. Ferbrache was down here and he was in my place of business, and was telling me something about him having some teams up there. I don't know whether he told me, or whether I broached the subject to him. I am inclined to think I broached the subject to him. In the first place, I asked him if he knew he was going to be closed out; that I understood

that Joe Poirier was going up there to take the team, and I said, 'I understand you are going to lose the others that way, too.' Well, he said he wouldn't wonder; he said he was beginning to look for it. I said, 'What is the matter with making a little money yourself and me making a little money; here is a chance for us both to make some money, and if you will take a cheap price for them I will go up and buy them.' Well, we talked the matter over, and he told me he would sell me a team. I forget now how much he told me he would take for it. I finally told him I would give him so much money for such a team or for the two teams. He said he did not know anything about selling the two teams until he could go up there and see the folks, but one team he would sell me. I told him all right. So I went up there and bought one of those teams. When we got up there we talked with his brother about the other team. This team I bought was the team which Poirier attached. I think Stone attached it too. I know as soon as I got into Spokane, I wasn't there but a few minutes, when there was two or three attachments covering the team. They talked the matter over about the other team. I don't know whether it was Link with his mother, or with his father, or with his brother, I don't know who, but they talked the matter over, and I stood down by a spring' or well—it looked to me like a spring—after night, I think they went up toward the house. There was one of the brothers there he called 'Henry.' They told me finally that they would keep the one team, that their mother would hold that."

The testimony shows that R. L. Ferbrache and one other of the boys composing the firm were bargaining with Jacobs to sell him the teams that they claimed to have sold to their mother; that they did sell him one of them, in the night-time, and he took them out of the state; that it was done for the purpose of preventing Stone or Poirier from taking them under attachment. It appears also that this conversation between Jacobs and R. L. Ferbrache as to selling these teams to Jacobs was at plaintiff's house, and one team was sold and delivered to Jacobs without consulting plaintiffs, or either of them, only a few days after the bills of sale were made to the plaintiff. Under the circumstances the questions put to R. L. Ferbrache

were proper. (See *Mamlock v. White,* 20 Cal. 600; 1 Green-leaf on Evidence, sec. 190; *La Fitte v. Rups,* 13 Colo. 207, 22 Pac. 309.)

The fourth error assigned was the striking out all the evidence of Jacobs above quoted. It appears from this evidence that the firm of Ferbrache Brothers was then insolvent, and this whole transaction with Jacobs was had for the sole purpose of defrauding their creditors, and it has a strong tendency to prove that the sale of both teams to the mother of the boys was a sham, and made to cover up this property. The mother testifies that she did not see Jacobs at all, did not know him, and first claimed that the Poirier team had not been transfered to her; that when she learned it had been transferred to Jacobs she did not object to it, but, as an excuse, said that the Poirier team was not of much value; she also admitted afterward that she knew of the sale to Jacobs.

The testimony of Jacobs was proper evidence under the circumstances, and to strike it out was error. (8 Am. & Eng. Ency. of Law, 778; *Hart v. Newton,* 12 N. W. 508, 48 Mich. 401.) "Where the question in issue is as to the good faith of an alleged purchase of a stock of goods, much latitude of inquiry should be permitted as to the conduct of the parties or circumstances of the transaction and the consideration of the purchase, and as to the means of the vendee." (*Douglass v. Hill,* 29 Kan. 527; *Kalk v. Fielding,* 50 Wis. 339, 7 N. W. 296.) "Evidence of similar transactions showing fraud occurring about the same time, or as a part of the same scheme, is usually admissible." (*Day v. Stone,* 59 Tex. 612; *Heath v. Page,* 65 Pa. St. 108, 3 Am. Rep. 533; *Adams v. Kinney,* 59 N. H. 133.)

In attacking the good faith of the sale or conveyance of property it is also competent to show that the vendor or grantor was in embarrassed circumstances when the sale or conveyance was made. (*Geisendorf v. Eagles,* 106 Ind. 38, 5 N. E. 743.) Even common report of insolvency is admissible. (*Gordon v. Ritenour,* 87 Mo. 54.) In cases of fraud subsequent acts are frequently resorted to for the purpose of showing antecedent fraud. The dealing with property to-day by the vendor as his property is evidence to show a fraud committed in the sale of a

month ago, and subsequent acts are indicative of the intent and character of the first. (*Butler v. Collins,* 12 Cal. 457; *Flood v. McClure,* ante, p. 587, 32 Pac. 254, decided at this term.)

Instructions Nos. 1 and 2, requested by the plaintiff, and 3 and 4 given at the request of the defendant, are proper. Instructions 1, 2, 3, 5 and 6, requested by the defendant, are too long, and contain conditions that could not be approved by the court; for instance, No. 2 contains these conditions: "If the plaintiff did not at all times after the pretended sale of said mules. have exclusive possession and control of said mules, then the title of the plaintiff is void." This is not the law, and it was properly refused. It is not necessary that the purchaser of property shall at all times have exclusive possession of it. He may hire it out to others, or even to the same party from whom he purchased it, and where the purchase is in good faith it will not defeat his title. All the circumstances must be taken into consideration where the evidence of fraud is not positive and direct.

Instruction No. 4, requested by the defendant during the argument, was the law, and should have been given. These latter instructions seem to have been submitted to the court, at or about the time of the close of the argument in the case. They are long and contain intricate clauses, and, as we have said, some of them contain provisions that are not the law.

The attorney has the time to prepare the instructions before the trial closes, and frequently before it begins. They should consist of clear, concise and brief statements of provisions of law, applicable to the evidence, and should be presented to the court at the beginning of the argument, if practicable, and not at its close, so that the court may have time to carefully consider them. If this practice should be followed by the bar, it is believed that members of the bar would have less reason to complain of the court, and the instructions would be much better. These remarks are not made because specially applicable to this case, but as applicable to all cases.

The judgment in this case is reversed, and a new trial ordered; costs awarded to appellant.

Huston, C. J., and Sullivan, J., concur.