## JANSSEN VS. LAMMERS and another.

*Mills and mill-dams. Damages. New trial.*

1. In an action for flowage of plaintiff's land by defendant's dam (which had been maintained for eighteen years), it was not error to instruct the jury that if the dam had been maintained at a uniform height for ten years preceding the commencement of the action, or if no greater injury had been occasioned by it to plaintiff's land at any time during than before said period of ten years, they must find for defendant. Laws of 1862, ch. 184.

2. It appearing that the stream, where not affected by the dam, overflowed its banks in high water, and that it was impeded by drift wood on

Janssen vs. Lammers and another.

plaintiff's land, it was not error to charge the jury that if any injury was occasioned to said land by reason of the water being impeded by said dam, then they should consider the injury done to lands by the river where not affected by the dam, and the injury occasioned by the drift wood, and by the dam at the height at which it had been maintained for ten years before the suit, and should then estimate and award the *additional* injury occasioned by the raising of the dam.

3. Had this instruction been erroneous, the error would be immaterial, the jury having found that the dam had *not* been raised in height within the ten years.

4. Where the testimony is conflicting and doubtful, and the circuit court has refused a new trial, this court will not interfere with the verdict merely because it appears to be contrary to the preponderance of evidence.

APPEAL from the Circuit Court for *Sheboygan* County.

Action under the mill-dam act, against the owners of a mill and dam, to recover damages for flowing lands. The complaint alleges the plaintiff's title to certain lands, the maintenance of a mill-dam by the defendants across Onion river, and the flowing and damage to plaintiff's lands by reason thereof; and also that such dam is raised to an unreasonable height; and asks to have the damages assessed and judgment entered therefor.

The answer raises two issues: 1. That the dam is not maintained at an unreasonable height. 2. That it had been maintained at the same uniform height for upwards of twenty years previous to the commencement of the action.

The evidence showed that the dam had been built by other parties some eighteen years previous to September, 1865, when it was rebuilt by the defendants. The evidence as to whether it had been raised by them, so as to cause flowage of lands above to a greater extent or for a longer time than it did previously, was quite conflicting. The particular instructions to the jury, upon which the case turns, and the facts upon which they are based, are given in the opinion of the court.

The jury found " that the plaintiff is not entitled to recover any damages, and that the dam of the defendants is not raised to an unreasonable height."

From the judgment entered on that verdict the plaintiff appeals.

Bentley & Seaman, for appellant, contended that the third proposition charged by the court at the respondents' request was erroneous, citing Smith v. Ross, 17 Wis., 227; Angel & Ames on Watercourses, secs. 208, 221, 224; Baldwin v. Calkins, 10 Wend., 167; Stiles v. Hooker, 7 Cow., 268; that the fourth proposition so charged was error because it assumed facts not proved, citing 3 Gra. & Wat. on New Trials, 824, etc.; and that the verdict was not sustained by the evidence, and was against the weight of evidence, and also perverse, citing 1 Gra. & Wat. on New Trials, 361; Mumford v. Smith, 1 Caines, 520; Hutchinson v. Coleman, 5 Hals., 74; Wallace v. Frazier, 2 Nott & McCord, 516; Johnson v. Scribner, 6 Conn., 185; Moak v. Bourne, 13 Wis., 514; Laville v. Lucas, id., 617; Whalon v. Blackburn, 14 id., 432.

B. Williams, for respondent, relied upon chap. 184, Laws of 1862, as a bar to the present action, the height of overflow and not its continuance, determining the question of bar; and argued that the mill-dam act does not award compensation when the injury results from the flow being impeded in freshets, citing 2 Allen, 355; 2 Gray, 384; 6 Barr, 379; Angel on Watercourses, secs. 95, 117, 118, 119, 347, 348; 23 N. Y., 42; 2 Coms., 196; and that the evidence fully sustained the verdict.

COLE, J. It is claimed that there was error in giving the third and fourth instructions asked on the part of the defendants.

The third instruction was to the effect that, if the jury should find from the evidence that the dam of the defendants had been maintained at a uniform height for the ten years preceeding the commencement of the action; or if they should find that no greater injury had been occasioned the lands of the plaintiff by said dam since Nov. 1st, 1857, than prior to that time, then their verdict must be for the defendants.

We do not see any substantial objection to this instruction. It was in fact merely directing the jury that if they found that the defendant's dam had been maintained at a uniform height for ten years next preceding the commencement of the suit, and the height of the water had not been raised by it in that time so as to flow the plaintiff's land to a greater extent than it had been flowed prior to that time, that then the action was barred. This was charging almost in the language of the statute. Chap. 184, Laws 1862. If for ten years prior to the commencement of the suit the dam and water had been kept up and maintained at the same height, and no greater damage had been occasioned by reason of the dam and backwater caused by it after the dam was rebuilt than before, then the plaintiff could not recover for the injury. *Smith v. Russ*, 17 Wis., 227, and *Ruehl v. Voight*, (unreported.) In other words, our statute bars an action for the recovery of damages for the flowing of lands when the lands have been flowed for ten years prior to the bringing of the suit.

The fourth instruction given at the request of the defendant, was to the effect that, if the jury should find that any injury was occasioned to the lands of the plaintiff by reason of the current of Onion river above the dam, being impeded by the dam of the defendants, then the jury should consider the injury occasioned to lands by the Onion river not affected by the dam, and the injury occasioned by the drift wood in plaintiff's land, and by the dam at the height which they should find the same had been maintained for ten years prior to the commencement of the suit, and then estimate and award the damages for the additional injury occasioned by the raising of the dam.

We do not think any just exception can be taken to this instruction when we consider some facts which were fully established by the evidence. The dam had been built for about eighteen years, when it was partially destroyed in September, 1865. It has been rebuilt since, and the claim of the plaintiff is that it has been raised so as to cause the water above to flow lands

to a greater extent or for a longer time than it did previously. It appears that in times of high water and freshets, the Onion river overflowed its natural banks and channel and flowed the plaintiff's lands to a greater or less extent, and that there is some drift wood and brush in the bed of the river on his land. The instruction was obviously framed to meet the case, providing the jury were satisfied from the evidence that the dam when rebuilt was raised above its original height, and so caused the back water to overflow lands of the plaintiff not previously flowed. And, in that event, they were directed to compensate the plaintiff for any additional injury caused his land in consequence of raising the dam above its original height. It is said the instruction was objectionable for assuming that the dam as maintained before it was rebuilt, injured the plaintiff's lands and that they were injured by the waters of Onion river when the current was unaffected by the dam. But whether these assumptions of fact were correct or not, was quite immaterial to the question of the liability of the defendant. Indeed, the entire instruction is immaterial, in view of the finding of the jury. For they found that the dam had not been raised within ten years next preceding the bringing of the suit, so as to cause the water to overflow and set back to a greater extent than it did before.

A motion was made for a new trial on the grounds that this verdict was not sustained by the evidence; that it was against evidence; that it was against the *weight* of evidence; and that it was perverse. This motion was denied, and it is claimed that this ruling was erroneous. There is no ground whatever for saying that the verdict for the defendants was perverse, or was the result of passion or prejudice, and rendered in defiance of law and evidence. There is, indeed, no ground for affirming that the verdict is unsupported by the evidence, or that it is manifestly against the evidence and the justice of the case. While we say this, we may admit that we possibly might have drawn a different conclusion from the tes-

timony than the jury did. Upon reading the testimony as contained in the bill of exceptions, we should be inclined to the opinion that probably the dam was raised some when it was re-built, above the original height. But there are several witnesses who swear positively that it was not, that they were present and saw the old spar dam measured some time before it was taken out, and afterwards saw the new dam measured, and that the new is five inches or more lower than the old dam. This is the testimony of the witnesses William and Peter Bach, J. Kersinger, A. Zuehrmond, and the defendant, Louw Arntsen. John Johnson, who sold the land to the plaintiff in 1864, and who had owned it since 1839, could discover no difference in the overflowing of the land after the dam was re-built. There is considerable other testimony which tends directly to support the decision of the jury. The most that can be said is, that the proof is quite contradictory and positive, both for and against the supposition that the dam has been raised. It was the province of the jury to pass upon this conflict in the testimony. And, while the preponderance of the evidence seems to our minds against the result reached by the jury, yet, under the circumstances, we do not feel we should be warranted in overruling the decision of the circuit court in refusing a new trial. For at most, the evidence is conflicting and doubtful, and in such a case the rule of this court is not to interfere with the verdict.

_By the Court._ The judgment of the circuit court is affirmed.