Hopkins and another vs. Langton and another.

HOPKINS and another vs. LANGTON and another.

FRAUDULENT SALE: (1.) *Vendor's fraudulent intent and vendee's knowledge thereof must be shown.*

EVIDENCE: (2.) *Error to reject evidence of vendor's fraudulent intent.* (3.) *Evidence necessary to charge vendee with duty of inquiry.* (4.) *Improper instruction as to degree of evidence.*

EXCEPTIONS: (5.) *Exceptions taken by one party cannot be considered on appeal by the other.* (6, 7.) *Modifications of the rule.*

ATTACHMENT: (8, 9.) *Service of summons in attachment, evidence of.* (10, 11.) *Defect in appraisement of property attached, how remedied.*

1. To impeach a sale for fraud as against the vendor's creditors, both the vendor's fraudulent intent and the vendee's knowledge of it (or of circumstances which charge him with the duty of inquiry) must be shown.

2. It was error to reject evidence of the vendor's fraudulent intent, though not accompanied at the time by evidence of the vendee's knowledge. If the latter kind of evidence were not substantially introduced, the vendee would not be prejudiced by the admission of the former, as a verdict could not be found against him on that alone.

3. It was error to instruct the jury that the vendee was not chargeable with notice of the vendor's fraudulent intent so as to avoid the sale, unless he had before him at the time of his purchase " good and substantial evidence of it, such as sends conviction home to the mind and establishes a well founded belief." A less degree of evidence than this will charge the vendee with the duty of inquiry.

4. Where such an instruction is given after numerous others, some of which state the rule correctly, it must be regarded as so modifying the whole as to require a reversal of the judgment in favor of the vendee.

5. The general rule, in the absence of any contrary statute, is, that exceptions taken by one party cannot be considered on appeal by the opposite party.

6. But when the appellant is compelled to establish his title or defense through certain documentary or record evidence offered by him, and it appears therefrom that his title or defense is fatally and incurably defective, and the respondent excepted to the admission of the evidence, *it seems* that the judgment should not be reversed even though there were errors committed against the appellant.

7. Thus, where the action was for the seizure and sale, by the appellants, of certain chattels, and they justified under writs of attachment in

suits against plaintiffs' vendors, and alleged that the sale to plaintiffs was fraudulent and void, if the records in the attachment suits, admitted against plaintiffs' objection, were fatally and incurably defective in respect to showing jurisdiction, the judgment should not be reversed for errors against the appellants. Otherwise if the defects in the evidence may be cured before a new trial.

8. Whether and how far a recital in the judgment of a court of general jurisdiction, in an attachment suit, that the summons was served upon all the defendants, is evidence of such service upon non-resident defendants, as to whom service was required to be made by publication; and whether appellants, justifying under the attachment, were bound to show the service by other proof—is not here decided. See *Falkner v. Guild*, (10 Wis., 572,) and *Whitney v. Brunette*, (15 Wis., 68).

9. The omission of the appellants to introduce in evidence other parts of the records in the attachment suits, showing the fact of service, being a *remediable* defect (if any), furnishes no reason for refusing to reverse the judgment for errors against them.

10. Where property seized under a writ of attachment was in fact duly appraised, but the appraisers omitted by mistake to *sign* the appraisement, although the statute requiring such signature (R. S., ch. 130, § 9) is *mandatory*, and the defect cannot be disregarded in this action, yet such defect may be remedied by *amendment*, on application to the court in which the attachment proceedings were had.

11. Such defect, therefore, in this case, constitutes no ground for refusing to reverse the judgment for errors against the appellants.

APPEAL from the Circuit Court for *Fond du Lac* County.

Action of trespass for the recovery of the value of a stock of goods seized by defendant, *Langton*, as sheriff, under certain writs of attachment, the defendant, *Van Dyke*, being plaintiff in one of the attachment suits. Defendants in their answers justified under the writs of attachment, and alleged that at the time the goods were attached they were the property of the Red River Lumber Company, defendants in attachment, and that plaintiffs claimed them by virtue of a pretended sale from the Red River Company, which was fraudulent and void.

Plaintiffs established in evidence their purchase and possession of the goods on the 22d day of November, 1867, the seizure by defendants being on the 27th day of the same month. Defend-

ants offered, among other evidence, the depositions of J. B. Bradford and Thomas K. Erwin, tending to show fraudulent intent upon the part of the vendors, to the admission of which plaintiffs objected, and the objection was sustained. At the close of the instructions, which were exceedingly voluminous, the court, at the request of plaintiff's counsel, charged as follows: "I mean that you should not charge the plaintiffs with notice of the fraudulent intent of the Red River Company, so as to avoid this sale, unless they had before them at the time these goods were purchased, good and substantial evidence of it, such as sends conviction home to the mind and establishes a well founded belief. Nothing short of this would be sufficient to charge them with knowledge so as to defeat their recovery in this action, and any notice - or knowledge of fraud they may have had after this sale was made, would certainly not avoid the sale or in any way affect it." Verdict for plaintiffs, and a motion for a new trial being overruled, defendants appealed.

*Hastings & Greene*, for appellants, *L. B. Caswell, contra.*

Dixon, C. J. The court erred in excluding the depositions of the witnesses Bradford and Erwin, offered by the defendants. In cases of this nature, beside the relation of debtor and creditor, two facts are to be shown in order to establish the defense, first, fraud on the part of the vendor of the property in making the sale, and, second, knowledge of such fraud on the part of the vendee or purchaser at the time of purchasing, or knowledge of such other facts and circumstances by the vendee as ought to have put him upon inquiry and would have led to an ascertainment of the truth, or as will afford reasonable ground for the inference that he purposely or negligently omitted to make those inquiries which an ordinarily cautious and prudent man in the same situation would have made. Knowledge by the vendee of the fraudulent intent, or the existence within his knowledge of other facts and circumstances naturally and justly calculated to awaken suspicion of it in the mind of a man of ordinary care

and prudence, thus making it his duty to pause and inquire, and a wrong on his part not to do so, before consummating the purchase, is essential in order to charge the vendee in every such case with a knowledge of facts so calculated to arouse suspicion, that the vendee cannot shut his eyes, but must look about him and inquire. The depositions offered and rejected had no tendency to prove the guilty knowledge or participation of the vendees in this case, but they did tend very strongly to prove the fraudulent intent of the vendors which was the first fact to be established by the defense. For that purpose they are admissible and should have been received, and then, if there was no evidence to connect the plaintiffs with such fraudulent intent of their vendors, or to show that they knew or ought to have known it, or to have inquired into it, which was the other distinct fact also to be shown by the defense, the jury would have so found and returned by their verdict and the plaintiffs could not have been prejudiced.

Another error, which in the judgment of this court is clear and unquestionable, and which follows from what has already been said, was in the final instruction of the court to the jury, given at the request of the plaintiffs where the judge said : " I mean you should not charge the plaintiffs with notice of the fraudulent intent of the Red River Company so as to avoid this sale, unless they *had before them* at the time these goods were purchased, *good and substantial evidence of it, such as sends conviction home to the mind and establishes a well-founded belief — nothing short of this would be sufficient to charge them with knowledge, so as to defeat their recovery in this action,*" etc. This instruction, or rather small part of one, given after all the others, and at the close of a charge made up almost entirely of the written requests prepared and presented by counsel on both sides, and all of which were given, and which together amounted to over forty folios, must be regarded as a modification of all the others, and was in substance informing the jury that to charge the plaintiffs with notice of the fraudulent intent of their vendors, or to put

them upon inquiry which, if omitted, was equivalent to notice, the plaintiffs must have had at the time of the purchase actual knowledge of the fraudulent intent or such evidence of it before them as would have been sufficient to establish the fact in a court of justice. A proposition so wide from the true rule of law governing in such case requires no argument to elucidate its error. The court had more than once in the course of the charge stated the correct rule as indicated, but as already observed, the last instruction must be regarded as having so far qualified it, and substituted another and most erroneous one, that nothing short of a reversal of the judgment and the granting of a new trial can be looked upon as an adequate means of correction.

Something ought to be said in this opinion in animadversion of the practice of counsel who prepare and present so many and such voluminous and repetitious requests to charge, as was done in this case, where three or four requests shortly drawn would have covered all the points of law involved and served a far better purpose. With such a wordy cloud of instructions, as that by which the jury were showered, we might say deluged, in this case, twenty-three long ones from one side and seventeen from the other, the marvel is that the jury should have known anything about the law. The strong probability is they did not. When the learned judges of the circuit courts shall take the responsibility of rejecting instructions thus long drawn out and repeated to the point of obscurity on account of their length and verbosity and tendency to bewilder the jury, and shall substitute some brief and appropriate instructions of their own, it will be time enough, no doubt, for this court to consider and determine the propriety of such action. We may, however, at this time, with safety predict that any like action on their part which shall, consistently with the ends of justice, operate to check this evil and repress the spirit of verbosity, which too often prevails in these matters to the detriment of law and jus-

tice, will undoubtedly receive the favorable consideration of this court.

*By the Court.*— Judgment reversed and a *venire de novo* awarded.

On a motion for a rehearing, the following opinion was filed :

DIXON, C. J.   A motion for a rehearing is made upon two points overlooked and not decided when the case was formerly considered and judgment pronounced.

The appeal is by the defendants from a verdict and judgment against them.  It is contended in their behalf that the points urged are not before us for examination, inasmuch as they arise upon objections and exceptions taken by the plaintiffs in the court below, who prevailed in that court, and who have not settled their exceptions, except as the same are embodied in the defendant's bill, and by whom no appeal has been taken to this court. The general rule, in the absence of any statutory regulation to the contrary, is undoubtedly as contended for by the counsel for the defendants, that exceptions so taken by the respondent cannot be examined or considered on the appeal taken by the opposite party.   This has been so held by this court, as will appear from the cases cited by counsel.   But whilst the same may be true as a general rule, we are not prepared to say that there may not be exceptions to it.   If, for example, in a case like the present, where the defendants must make their title or establish their defense through certain documentary evidence appearing in the record, to the admission of which, when offered by the defendants, the plaintiffs objected, and if, in addition, it appeared from such evidence that the title or defense of the defendants was fatally and incurably defective or insufficient, under such circumstances we are not prepared to say that the objection of the respondents ought not to be considered.   The objections here urged are of that kind, where, if the documentary evidence, offered and relied upon by the appellants, was

fatally and incurably defective, and insufficient to establish their title or to show any defense on their part, it would follow that the judgment against them should at all events be affirmed, and that no new trial should be had, notwithstanding any other error which might have intervened in the proceedings. We shall, therefore, proceed to examine and consider the points urged by counsel for the respondents, so far as to determine whether the defects in the documentary evidence, produced and relied upon by the defendants, are of the character above mentioned or not.

The defendants justify the seizure and sale of the goods and chattels in controversy, under several writs of attachment sued out in favor of certain creditors of the plaintiff's vendors, and aver that the purchase of the same goods and chattels by the plaintiffs was fraudulent and void as to such creditors. In support of such defense, certified copies of the records in the attachment suits, or of portions of such records, were offered in evidence by the defendants, and admitted by the court, against the objections of the plaintiffs. It would seem, as to some of the writs of attachment, one or more, that service was made upon the attachment defendants by the publication of notice. In the copies of the records produced, that portion of them showing the service by publication was omitted, for the reason, as we are informed in the brief of counsel, that it was deemed unnecessary. Objection was taken by the plaintiffs to their admission, on that ground, and the objection overruled. The position taken by counsel for the defendants is; that as the judgment in each suit recites the fact of service on all the defendants, it is presumed that it was rendered only on due proof of service. In support of this proposition counsel cites among other authorities; the language of this court, by Mr. Justice Paine, in *Falkner v. Guild*, 10 Wis., 572, to the effect that in these special statutory proceedings, had in a court of general jurisdiction, the same presumption exists in favor of the jurisdiction of the court in them, over the process, the subject mat-

ter and the parties, as exists in other cases, or in the usual common law actions.  If counsel will examine the opinion of the same learned judge, in *Whitney v. Brunette*, 15 Wis., 68, they will find that it tends, or seems to tend, very strongly towards the opposite conclusion.  With no desire or intention, at this time, to modify or overrule the decision in *Falkner v. Guild*, upon the point, for it is entirely unnecessary to do so, or to reconsider it in the present case, we wish now merely to withhold the expression of any further opinion respecting it.  It is certainly a point in itself of very considerable delicacy and importance, and one which in view of the authorities, conflicting and inharmonious as they are, seems to have been rendered still more doubtful and obscure.  A very late case in the supreme court of Illinois, in which many decisions are collected and referred to, *Haywood v. Collins*, reported in 4 Chicago Legal News, 461, seems to lay down the rule that the recital in the judgment of service by publication, only raises a presumption of such service, when the judgment also recites, or it otherwise appears from the record, that the court rendering the judgment actually examined into and considered the evidence or proof of such service, and adjudged and determined that it was sufficient.  In the present case, however, since the omission to produce that part of the records showing the service by publication was a remediable defect, one which may be cured upon another trial, it follows that the judgment should not be affirmed on this point.

The other objection, taken by the respondents to the admissibility of the records of proceedings in the attachment suits, was that the appraisement was not signed by the appraisers.  The statute declares that the officer executing a writ of attachment by seizure of the property of the defendant, " shall cause all property attached by him to be appraised by two disinterested freeholders of the county, who shall be first sworn by him to make a true appraisement thereof, *which appraisement shall be signed by the appraisers*, and the appraisement and inventory

shall be returned with the writ of attachment." R. S., c. 130, § 9. 2 Tay. Sts., 1471, § 11. The proceedings of the officer in executing the writs were, as appears by his returns, in all respects *regular* and proper, except that the appraisers omitted to sign their names to the appraisement. Both of the appraisers were sworn and examined as witnesses on the trial of this action, and it appears from their testimony that they were regularly chosen and qualified, and made the appraisement in due form of law, but by mistake the same was not signed by them. It is insisted, by counsel for the respondents, that this omission was fatal to the entire proceedings, and avoided them from the first, rendering the sheriff, the defendant *Langton*, a trespasser *ab initio*. To this, counsel opposed reply, first, that the statute requiring the signatures of the appraisers is directory and that compliance with it was unnecessary; and, second, that the omission is curable by amendment under the statute and, therefore, should be disregarded in a collateral proceeding. We are wholly unable to agree with counsel upon the first proposition, and cannot fully concur with them as to the second. Counsel cite many cases in which statutes have been held to be directory, but none arising upon statutes authorizing special proceedings of the nature here under consideration. The rule of strict construction which prevails with respect to statutes of the latter kind, is well understood. It is a rule seldom or never departed from. It is alluded to and correctly stated by Mr. Justice PAINE in *Whitney v. Brunette, supra*. It seems to be of the very nature and essence of such rule, that nothing required by statutes of the kind can be looked upon as directory, but that all is of the substance of the thing which must be done to make the proceeding effectual. It excludes, therefore, in such cases the application of the rule contended for by counsel. If the courts were to begin by dispensing with the signing by the appraisers, they might be required to dispense also with their being sworn, or being freeholders of the county or disinterested,

and it would be impossible to say where the process would stop or where it ought to stop, and thus all the safeguards and benefits designed to be secured by the statute would be totally frittered away and lost. We cannot assent, therefore, to the views urged by counsel, but must hold that all the essential requirements of the statute, of which the signature by the appraisers is one, must be complied with, in order to show a valid proceeding of record.

But upon the second proposition we are inclined to agree with counsel, not that the omission to sign may be disregarded, but that it may be supplied under the power of amendment. In some cases, as counsel say, the omission or irregularity, being amended, may be disregarded in a collateral proceeding, but not in a case like this. Here the regularity and validity of the proceeding must appear by the record, and if that be defective or show that the substantial requirements of the statute were not complied with, it is fatal to the proceeding. In *Whitney v. Brunette*, Mr. Justice PAINE was disposed to hold, and did hold, that the statute of amendments was inapplicable to proceedings by attachment, so that defects rendering them void on their face could not be reached or remedied under it. I was of the opposite opinion, and so saw fit not to give my assent to the proposition, the same being, as I thought, unnecessary to a decision of the case. In *Bank v. Taylor*, 16 Wis., 609, the doctrine that the sheriff might amend his return to the writ of attachment issued against the property of a non-resident debtor, was assumed and fully assented to by the whole court. And in the still later case of *Robertson v. Kinkhead*, 26 Wis., 260, it will be seen (pages 566, 567 and 570) that there was no division of opinion upon the same question. We think, therefore, the fact of a regular and valid appraisement being shown, save only the signing by the appraisers, that such omission may be supplied by the power of amendment on application to the court in which the attachment proceedings were had. This objection is then like the other, not one founded on a defect in

the defendant's documentry evidence, which was necessarily fatal and incurable, and so conclusive against all right and title or claim set up and made to the property by the defendants.

It follows from these views, that the motion for a re-hearing should be denied.

*By the Court.*—Re-hearing denied.