Kaufer and others vs. Walsh.

KAUFER and others, Respondents, vs. WALSH, Appellant.

*May 3 — May 25, 1894.*

*Debtor and creditor: Fraudulent consignment: Attachment: Replevin by consignee: Court and jury: Evidence: Instructions: Verdict.*

1. The question of fraudulent intent in a debtor's conveyance of his property being made, by sec. 2323, R. S., a question of fact for the jury, the judgment in such a case should not be reversed on the ground that the verdict is against the evidence, unless it is so clearly and palpably against the evidence that the refusal of the trial court to set it aside was an abuse of discretion.

2. Evidence that the persons to whom a debtor had transferred his property with attempted secrecy had engaged in other fraudulent transactions with other persons, or that it was their common course of business to receive consignments in the same way from insolvent merchants, was not admissible to show their participation in the debtor's intent to defraud his creditors.

3. In replevin by the persons to whom the debtor transferred the goods, against the sheriff who had seized the goods on writs of attachment as the property of the debtor, and who justified on the ground that the transfer was fraudulent, it was error to instruct the jury that the sheriff was only a nominal party and that the real defendant was the attaching creditor, a resident of another state.

4. An instruction in such case that the burden was upon the defendant to prove that the transfer was made with the *design* and *intent* upon the part of the debtor to hinder, delay, *and* defraud his cred-

itors, and that plaintiffs *participated* in, as well as knew of, the fraud, and had *aided and assisted* the debtor in his design and attempt, was also erroneous.

5. It being a material question for the jury whether the plaintiffs obtained the goods in the regular course of their business, it was error for the court to say to the jury in relation thereto: "If plaintiffs have succeeded in proving these facts (about which I understand there is substantially no dispute)," etc.

6. It was error, also, to instruct the jury that it was incumbent upon the defendant to prove to their *satisfaction* and *convince* them by a *fair preponderance* of the evidence that the transfer was made with intent to hinder, delay, or defraud creditors.

7. An instruction that the party alleging fraud must prove it, that it is not to be presumed *however suspicious the facts and circumstances may be*, and that in cases of this nature *facts* must be shown in order to establish the defense, was erroneous as giving the jury to understand that positive evidence was necessary to prove fraud, in contradistinction from suspicious facts and circumstances.

8. The plaintiffs having made advances to the debtor upon the goods consigned to them, it was error to instruct the jury that, to defeat a recovery, it must be proved that the plaintiffs knew or had reason to know, at the time of making such advances, that the debtor did not intend to use such advances in the payment of his indebtedness or for the legitimate requirements of his business, or that he intended to use or dispose of such advances in such a way as to hinder, delay, or defraud his creditors.

9. The goods having been consigned to the plaintiffs to be sold on commission, and they having only a special property therein to the extent of the advances made, being about $7,600, a verdict that they were entitled to the possession of the property, of the value of $10,000, and six cents damages, was erroneous.

APPEAL from the Superior Court of *Milwaukee* County. Replevin.    The facts are stated in the opinion.

For the appellant there was a brief signed by *Williams & Friend*, attorneys, and additional briefs signed by *Williams & Friend*, attorneys, and *Moses, Pam & Kennedy*, of counsel, and oral argument by *Max Pam* and *O. T. Williams*.

For the respondents there was a brief by *Winkler, Flanders, Smith, Bottum & Vilas*, and oral argument by *J. G. Flanders*.

ORTON, C. J.   The plaintiffs, *Herman Kaufer, Charles Smithing,* and *S. E. Sherman,* under the firm name of Kaufer, Smithing & Co., did a commission auction business in the city of Milwaukee, and sold merchandise to the trade (wholesale), and also insolvency goods and real estate for different parties who consign to them, at public auction. Jacob Berkson & Co., wholesale merchants and jobbers of gents' furnishing goods, of the city of Chicago, consigned to the plaintiffs various lots of said goods between the 14th and 29th days of August, 1891, and the plaintiffs had received the same to be sold on commission, of the value of $10,000; and the plaintiffs had advanced on the same, at different times, the sum of $7,606.10.   The said Jacob Berkson at that time was, and for some time before had been, indebted to one Aaron Feltenstein, by promissory note and checks, in two sums, of $2,500 and $6,800; and the said Feltenstein made an affidavit in which he stated, in effect, that the said Jacob Berkson had made such a disposition of his property with intent to hinder, delay, or defraud his creditors; and thereupon he procured writs of attachment to issue from the superior court of the county of Milwaukee against the said Berkson and his property, and placed the same in the hands of the defendant, who was sheriff of Milwaukee county; and the defendant, as such sheriff, levied upon and attached said gents' furnishing goods as the property of said Berkson, and then in the possession of the plaintiffs as aforesaid, and which had not yet been sold by them.   The plaintiffs thereupon brought this action of replevin against the said defendant for their special interest of $7,606.10 in said goods, which they had so advanced to the said Berkson.   The defendant answered, setting up said writs of attachment and the levy of the same on said goods by him as such sheriff, and alleged that the said goods were the property of said Berkson.   This raised the question of fraud in the consignment of said

goods by Berkson to the plaintiffs, which was the main issue in this case.

The testimony on the trial tended to prove the following facts: Jacob Berkson had been a wholesale merchant or jobber of gents' furnishing goods in the city of Chicago for a long time, and had become indebted to a great number of persons and in large amounts which he was unable to discharge, and was grossly insolvent. For some time before he made these consignments to the plaintiffs he had been secretly shipping away his goods to different places and persons, and his stock of goods had become reduced to the amount and value of $20,000. One Nathan Rubin Wideman, sometimes called Nat Rubin or Rubien, had been employed for some time in the store and business of Berkson. He had formerly been in business as one of the firm of Kaplin & Rubien. He had been acquainted with the plaintiffs about two years, and had made several consignments of goods to them from different concerns, and plaintiffs paid him a commission of two per cent. thereon; and, when his firm of Kaplin & Rubien was about to fail, he made a consignment to them of their goods on the same terms. Such consignments were not made in the name of the consignors, and to the names of the plaintiffs as consignees, but fictitious names were used for both, so that the goods could not be traced. Berkson and the plaintiffs were not acquainted with each other, and Rubin brought them together to make arrangements for these consignments. They were also to be made in the names of fictitious persons. *Mr. Smithing* of the plaintiffs visited the store of Berkson in Chicago, and examined his stock of goods, and estimated them at $20,000; and he was told by Rubin that Berkson was about to fail and wanted the goods shipped in fictitious names so that they could not be traced, and *Smithing* acceded to such request. The plaintiffs employed Rubin to obtain the consignment for them, and they agreed to pay

him two per cent. commissions thereon, but this agreement was kept secret from Berkson. The boxes and packages were marked in fictitious names, and seventeen or eighteen such names were used in shipping the goods to the plaintiffs. The bills of lading were sent to them, and by them they were able to get the goods through draymen and others, and their own names would not be known. The payments were at first made by checks to Rubin, and then in cash only, so that the transaction could not be known to others; and these payments were not entered on the books of the plaintiffs, and the money Berkson received was not deposited in the bank with which he usually did his business. The said Aaron Feltenstein, the plaintiff in the attachments, suspected that Berkson was shipping away his goods or otherwise disposing of them; and he employed detectives to watch his store and see the goods packed and boxed, and then follow them to the boats and so on to the plaintiffs in Milwaukee, and thereby he made discovery of these consignments.

The jury rendered a verdict in favor of the plaintiffs, and that they are entitled to the possession of the property, of the value of $10,000, and six cents damages, and the defendant has appealed from the judgment entered thereon.

There was an immense mass of testimony, defensive and explanatory, making a printed case of over 900 folios; but, altogether, it does not seem to change the effect of this statement of facts. The case was very ably tried by distinguished counsel, and, although the main facts were few and simple, this mass of testimony, much of it remote if not immaterial, was well calculated to confuse the jury and obscure the main and simple issues of the case.

1. The learned counsel of the appellant asks this court to reverse the judgment on the ground that the verdict is against the evidence. The question of *intent* to defraud in such a disposition of his property by Berkson to the plaint-

Kaufer and others vs. Walsh.

iffs is made by the statute a question of fact (sec. 2323, R. S.) and, as a matter of course, a question for the jury. We take cognizance of this question by an exception to the ruling of the court in refusing to set aside the verdict and to grant a new trial on the ground "(1) that the verdict is contrary to the evidence." To justify this court in reversing the judgment on this ground, there must be something more than a mere preponderance of the evidence against the verdict. The true rule in such a case is well stated by Mr. Justice PAINE in *Vilas v. Mason*, 25 Wis. 310, and is: "Where there is any construction of the plaintiff's testimony, which the jury were at liberty to give, that sustained the verdict, and the court below has refused a new trial, this court will not interfere upon the mere ground that the verdict is against evidence." This court refused to reverse the judgment and order a new trial in *Janssen v. Lammers*, 29 Wis. 88, even where it appeared to this court that there was a preponderance of evidence against the result reached by the jury. The same ruling in *Eaton v. Joint School Dist.* 23 Wis. 374. The question of intent to defraud, which is the main question in this case, being made by the statute a question of fact for the jury, adds force to the above rule. The evidence must be so clearly and palpably against the verdict as to make it an abuse of the discretion of the circuit court not to set it aside and grant a new trial, or this court would not be justified in reversing the judgment on this ground. Not wishing to express any opinion on the merits of the case, we will simply say that we do not think the evidence is such as to warrant our interference with the verdict on the merits.

2. The exceptions taken to the rejection of testimony offered on behalf of the defendant to show other transactions of the plaintiffs, claimed to be similar in character and intent to this consignment, were not well taken. Such evidence would create extraneous and outside issues, im-

pertinent to the issue in this case. Every case must rest upon its own facts. Testimony tending to show that the plaintiffs had engaged in other fraudulent transactions, and with other persons, would be no evidence of their participation with Berkson in his intent to defraud his creditors in this transaction. Transactions of the plaintiffs which are not a part of the *res gestæ* are not material to such a case as this. *Ranger v. Goodrich*, 17 Wis. 78; *Nash v. Hoxie*, 59 Wis. 384. On the question of fraud of an assignment, evidence that the assignor had once before failed and gone through bankruptcy and settled with his creditors at thirty cents on the dollar, is inadmissible. *Scott v. Seaver*, 52 Wis. 175. And so as to the offer to show that it was the plaintiff's common course of business to receive consignments of goods in the same way and under the same circumstances from insolvent merchants. It was not error to reject such testimony.

3. Many exceptions were taken to the instructions of the court to the jury, which we are compelled to hold were well taken, and that the instructions excepted to contain errors of law sufficiently material and important to cause a reversal of the judgment and the remanding of the cause for a new trial. The main issue in this case and the law relating to it are very simple and easily and readily understood by the jury upon very brief instructions by the court. The instructions on the law should be applied to the case before the jury on the evidence, and not consist of abstract dissertations on the law of fraud. The jury should have been instructed that it was incumbent on the defendant to prove that the various consignments of goods to the plaintiffs by Berkson were made by Berkson with intent to hinder, delay, or defraud his creditors of their lawful actions, damages, debts, or demands, and that the plaintiffs, or one or more of them, knew of such intent or had knowledge of such facts and circumstances as would put a prudent man

on inquiry, which, if prosecuted with ordinary diligence, would lead to a knowledge of such intent: (1) that Berkson made the consignments with intent to defraud his creditors; and (2) that the plaintiffs, one or more, knew that he did so with such intent. This is the law of the case. Any intelligent juryman may easily understand it. *Hopkins v. Langton*, 30 Wis. 379; *Hooser v. Hunt*, 65 Wis. 71.

First. The court instructed the jury that the defendant, *Walsh*, as sheriff, levied upon the property by virtue of writs of attachment in actions in which one Feltenstein was plaintiff, etc., and " that *Walsh* is only a *nominal* party, and that the party in interest is Feltenstein, who is the plaintiff in the actions, and that *he* defends this action as a creditor of Berkson, and claims and insists that the transfer of the property was made with intent," etc. This long instruction of the manner in which Feltenstein was interested in the case as an attaching creditor and the only party in interest, was wholly unnecessary and the jury had nothing to do with it one way or another. But this was not all. It misstated the parties to the action, and introduced a new defendant to the action, not in the record, and tended to confuse and complicate the issue and load the memory of the jury with extraneous and immaterial matter. The defendant, *Walsh*, answered that he took the goods as sheriff on certain attachments as the property of Berkson, and alleged that they were the property of Berkson. To prove that they were still the property of Berkson, the defendant, *Walsh*, introduced testimony tending to show that the disposition of the goods by Berkson to the plaintiff was fraudulent and void. It is the defendant, *Walsh*, who has answered, justifying his taking of the goods as sheriff on certain writs, and it is the defendant, *Walsh*, who claims and insists that the transfer was fraudulent; and that is all the jury had any interest in knowing. Why introduce to the jury this Chicago creditor of Berkson

(Feltenstein) as the real defendant in this action? The parties before the jury are the parties to the action on the record. This instruction is, in effect, that this suit is not between the plaintiffs, as merchants of Milwaukee, and the defendant, *Walsh*, as sheriff of Milwaukee county, but between the plaintiffs, of Milwaukee, and one Feltenstein, a Chicago creditor, seeking to collect his claim against Berkson. If there is anything in the personal influence of the parties affecting the minds of the jury, this instruction was unfavorable and unfair to the defendant in the action. We think that this instruction was not only unnecessary, extraneous, and uncalled for, but a material error in the case.

Second. The court instructed the jury as follows: "Feltenstein, the real party in interest, defends this action as a creditor of Berkson, and *claims and insists* that the transfer of the property under consideration to the plaintiffs by Berkson, *in the way and manner in which it was done by him,* was done with the intent to hinder *and* delay the creditors of Berkson in the collection of their debts and demands due them from Berkson, *and* to defraud them, and that the plaintiffs in this action knew of the fraudulent *design* and intent of Berkson in thus transferring and *delivering* the goods to the plaintiffs *to be sold,* at the time they were received by them, *and at the time they made their advances on the property,* and that the plaintiffs had knowledge or notice of, *and participated in, the fraudulent transaction,* and with such knowledge of facts and circumstances in the premises, *they aided and assisted Berkson in his attempt to hinder and* delay *and* defraud his creditors, and thereby became partakers in the fraud of Berkson, and although there may have been paid an advance of money on the property when it was delivered into their possession by Berkson or his agent, *yet they are not bona fide purchasers or holders of the property,* by reason of having had

Kaufer and others vs. Walsh.

knowledge of the intent of Berkson, *and having participated in his fraudulent scheme and* intent, *and aided and assisted him in his design to hinder and delay creditors,* and that, therefore, they acquired no title to or interest in the property, and are not entitled to hold *or obtain possession* thereof, as against the creditors of Berkson, *although they did advance money, and did pay to Berkson large sums of money, upon account of these goods, for the purposes for which they were received by them."* It has taken this long sentence, of nearly 400 words, for the court to tell the jury what one Feltenstein claims and insists and is required to prove in defense of this action. I have taken the liberty of italicizing those parts of the instruction of matters which neither Feltenstein nor the defendant claims or insists upon, or that are necessary to prove. It will be observed that they make material and erroneous additions to the necessary elements which constitute the law of fraud. They place on the defendant the burden of proving the intent to hinder, delay, *and* defraud; the *design* as well as the intent; the *participation* in the fraud as well as knowledge of it; that they *aided* and *assisted* Berkson in his *attempt* to hinder, delay, *and* defraud *at the time the advancements were made,* as well as at the time of the transfer of the goods; and that they *aided* and *assisted* Berkson in his *design* to hinder, delay, *and* defraud. Many things are added to the law of fraud which are not only unnecessary but impossible for the defendant to prove. These erroneous instructions on the law of fraud are so interspersed with and obscured by redundant matter and surplusage as to confuse or mislead the jury.

Third. After instructing the jury as to the burden of proof on the plaintiffs, and that the plaintiffs have undertaken to prove the same, the court said that they had undertaken to show "that the goods were obtained and procured by them *in the regular course of their business,*"

and that they made advan es, etc.   Then the court said:
"If the plaintiffs have succeeded in proving these facts
(*about which I understand there is substantially no dispute*),"
etc.   Herein the court virtually rules that there is no dis-
pute but that the plaintiffs obtained and procured the goods
"in the regular course of their business."   This was an
important and material fact for the jury to find, and the
court relieved them from it.   This was a material error.

Fourth.   The court also instructed the jury "that it is
incumbent, also, upon such party [defendant] to prove to
your *satisfaction* and *convince* you by a *fair preponderance*
of the evidence" that the sale or transfer was made with
intent to hinder, delay, or defraud creditors, etc.   In other
words, it must be proved to your satisfaction and convince
you that the transfer of the property was made with such
intent, but this must be done by a fair preponderance of
the evidence.   The jury, after they should find that such
intent was proved to their satisfaction, and that they are
convinced of it, must then inquire what is meant by a fair
preponderance of the evidence, and they would certainly
be unable to understand it.   This word has no proper use
in such a connection.   Fraud is not to be presumed, but
*clearly* proved, is all there is of it, and anything more would
be likely to confuse the jury.

Fifth.   The court said further: "It is a maxim of the law
that the party alleging fraud must prove it.   That means
that it is not to be presumed, *however suspicious the facts
and circumstances may be.*   In cases of this nature, *facts*
must be shown in order to establish a defense."   The jury
might well understand, from this language, that positive
evidence was necessary to prove fraud, in contradistinc-
tion from suspicious facts and circumstances, however sus-
picious they may be.   Fraud is more generally proved by
suspicious facts and circumstances than in any other way.
Positive evidence of *intent* to defraud is impossible.

Sixth.   The court instructed the jury that if the plaintiffs, "after having such notice or knowledge [of Berkson's intent], did not in any way aid or assist Berkson in disposing of his property, or hindering, delaying, or defrauding his creditors, then your verdict should be for the plaintiffs." This is contradictory to other parts of the charge, and clearly erroneous.

Seventh.   The following instruction is clearly erroneous : " But you must also find, in order to defeat a recovery by the plaintiffs, that the plaintiffs knew, or had reason to know, at the time of making such advances to Berkson, *the latter did not intend to use such advances in the payment of his indebtedness, or for the legitimate requirements of his business, or that Berkson intended to use or dispose of such advances in such a way as to hinder, delay, or defraud his creditors, and the burden of proving such knowledge on the part of the plaintiffs is on the defendant."* This instruction would account for the verdict having been rendered for the plaintiffs, even though the evidence of the fraud was as strong as it ever was in any case in the books.   It imposes an utter impossibility on the defendant,— to prove that the plaintiffs knew what disposition Berkson was going to make of the advances or the fruits of the fraud.   There is no such legal principle.   This error was very material, and no doubt affected the verdict.

Eighth.   To make this last instruction still more conclusive of the case, it is followed by the instruction: "And the defendant must satisfy you that they had such knowledge, by a fair *preponderance* of the evidence."

When the consignments of the Berkson goods were first received by the plaintiffs, it does not appear that they had any general property in them.   They were consigned to be sold at auction on commission, and the title remained in Berkson until they were sold.   When the attachments were levied on the goods, the plaintiffs had advanced on

the goods only the sum of $7,606.10. This gave the plaintiffs only a special property in them, for which only they were entitled to recover. The court instructed the jury that the plaintiffs must "show to you distinctly what that interest or special property is." The plaintiffs did show that they had advanced only the above sum. The verdict is therefore erroneous.

On account of the above errors the judgment must be reversed and a new trial ordered.

*By the Court.*— The judgment of the superior court is reversed, and the cause remanded for a new trial.