FERNHABER, Trustee, Respondent, vs. CREAM CITY CART-
AGE COMPANY and another, Appellants.

*December 16, 1921—January 10, 1922.*

*Fraudulent conveyances: Proof required: Transactions with rela-
tives: Evidence: Bankruptcy: Action by trustee: Necessity of
showing insufficiency of assets: Waiver.*

1. In an action of replevin by a trustee in bankruptcy to recover
   property transferred by chattel mortgages alleged to be in
   fraud of creditors, in order to prove fraud it is necessary to
   show not only that the mortgagor executed the chattel mort-
   gages without adequate consideration or with intent to hinder,
   delay, or defraud his creditors, but that the mortgagees at the
   time either knew of such intent or had knowledge of such
   facts and circumstances as would put a prudent man on in-
   quiry, which if prosecuted with ordinary diligence would
   lead to a knowledge of such intent.
2. The mortgaging of property to the mortgagor's father and
   mother-in-law did not of itself constitute fraud, but was a
   circumstance proper to be shown, and calls for closer scrutiny
   and clearer explanation of the transaction than in case of
   ordinary transfers.
3. Under sec. 2323, Stats. 1917, making the question of intent in
   fraudulent conveyances one of fact for the jury, evidence as
   to the fraudulent intent of the mortgagor is *held* sufficient to
   go to the jury.
4. On the cross-examination of a witness, where the question of
   fraudulent intent is involved, the rules prohibiting leading
   questions and requiring the best evidence must be greatly re-
   laxed and in many instances ignored; and it is error not to
   permit an exhaustive and searching cross-examination of the
   party charged with committing fraud.
5. Under secs. 57 and 65 of the federal Bankruptcy Act (30 U. S.
   Stats. at Large, 544, ch. 541), as to allowance of claims and
   dividends thereon, in a suit to regain property transferred by
   a bankrupt in fraud of creditors the trustee in bankruptcy
   must allege and prove that claims of creditors have been filed
   and allowed and that the assets are insufficient to satisfy such
   claims; but the objection that the trustee did not prove that
   the assets were insufficient to meet the claims of the creditors,
   which was not raised at the trial, cannot be raised on appeal.

APPEAL from an order of the circuit court for Milwaukee
county: E. T. FAIRCHILD, Circuit Judge. *Affirmed.*

Fernhaber v. Cream City Cartage Co. 176 Wis. 75.

This is an appeal from an order of the circuit court entered March 1, 1921, vacating a judgment of the civil court of Milwaukee county in favor of the defendants and ordering a new trial in the circuit court. The judgment in the civil court was based upon a directed verdict in favor of the defendants.

It appears that in the month of August, 1918, the defendant *Werner Stein* and one Hubert, being then copartners, executed to one A. W. Stein, the father of *Werner Stein,* a chattel mortgage in the usual form for $1,500. At the time of the execution of such mortgage the copartners were indebted to the Pauly Motor Truck Company on a balance for $180, and it was claimed by *Werner Stein* that the Motor Truck Company threatened to foreclose on its chattel mortgage unless such balance was paid. The defendant *Werner Stein* claimed that he secured from his father, A. W. Stein, the sum of $180 in cash with which to pay such balance due the Motor Truck Company and that such sum was used in the cancellation of the Motor Truck Company's claim. It was further claimed by both *Werner Stein* and his father, A. W. Stein, that from time to time since the year 1912 A. W. Stein advanced to *Werner Stein* numerous sums of money in various amounts, used by him both in his business and for his individual purposes, and that *Werner Stein* was also indebted to A. W. Stein for alleged work performed by the latter for the former for which he had not received pay. The testimony disclosed that *Werner Stein* never kept an account of moneys received by him from his father, and that he at no time executed a receipt or any evidence of indebtedness to his father for advancements made or for work and labor performed, and that he was unable to state the exact amounts borrowed or owing or the time when such loans or amounts became due; and that no prior demand had ever been made by A. W. Stein of *Werner Stein* for the payment of any of the items of indebtedness referred to or of any interest on said items.

A. W. Stein testified, among other things, that he kept a memorandum of the various amounts of money advanced to his son, and of charges for work and labor, in a small pocketbook, but that he was unable to produce such book upon the trial for the reason that it had been destroyed in a fire.

Mr. Hubert, one of the partners, testified that at the time of the execution of the chattel mortgage to A. W. Stein, *Werner Stein* told him that he feared the Motor Truck Company would seize upon his truck by virtue of its chattel mortgage, and that the only way to avoid such threatened action would be to execute a blind mortgage to his father for the sum of $1,500, and thus save the trucks from being seized by creditors. Hubert further testified that *Werner* told him at the same time that he was not indebted to his father.

About four months after the execution of said chattel mortgage to A. W. Stein the latter seized, among other things, the five-ton Republic truck referred to in the affidavit of replevin herein, and under and pursuant to proceedings had by virtue of said mortgage said truck was sold to one Arnold Stein, a nephew of A. W. Stein.

Shortly before the seizure of the Republic truck *Werner Stein* executed to his mother-in-law, a Mrs. Schattschneider, a chattel mortgage in the usual form on a three-ton Packard truck, in the sum of $1,500. At the time of the execution of the latter chattel mortgage *Werner Stein* was indebted to the Merchants & Manufacturers Bank of Milwaukee upon secured notes amounting to about $1,100. The bank did not press payment of these notes, nor were the notes due at the time. Nevertheless, it appears that the indebtedness to the bank, amounting to about $1,100, was paid by *Werner,* and it was further claimed that the balance of the amount received by him from his mother-in-law was used by him in the payment of various items of indebtedness owing by him in his business. Upon cross-examination of *Werner* he was unable to state what the various

amounts paid by him consisted of, nor was he able to prove such alleged items of indebtedness, excepting only by general oral statements.

Shortly after the execution of the Schattschneider mortgage the mortgagee levied upon the Packard truck, and upon proceedings had under chattel-mortgage sale the same was sold to the mortgagee, Mrs. Schattschneider.

Shortly thereafter A. W. Stein, Mrs. Schattschneider, and Arnold Stein incorporated the defendant *Cream City Cartage Company,* a corporation with a capital stock of $5,000, and Arnold Stein and Mrs. Schattschneider, respectively, transferred to said corporation the two trucks so sold as aforesaid under chattel-mortgage sale, and pursuant to such transfer stock of the corporation was issued to such parties.

In the month of April, 1919, and after the organization of the defendant corporation, *Werner Stein* made a voluntary assignment for the benefit of his creditors and subsequently thereto was declared a bankrupt, and in the course of the bankruptcy proceedings the plaintiff, *Louis Fernhaber,* was appointed the trustee in bankruptcy and began this action of replevin to recover from the defendant company, among other things, the five-ton Republic and the three-ton Packard trucks.

It is the contention on the part of the plaintiff that the defendant company holds these trucks in violation of the rights of creditors; that the transfer to the defendant company was without adequate consideration and in fraud of the creditors of *Werner Stein;* and that the plaintiff, as the representative of the creditors, is entitled to these trucks as a part of the assets of the bankrupt.

For the appellants there were briefs by *Rowan, Kalaher & Stoecker* of Milwaukee, and oral argument by *F. J. Rowan.*

For the respondent there was a brief by *E. J. Koelzer,* attorney, and *Hennessey & O'Boyle,* of counsel, all of Milwaukee, and oral argument by *Oliver L. O'Boyle.*

DOERFLER, J. Did the execution of the chattel mortgages and the subsequent sale of the trucks in question constitute conveyances made with intent to hinder, delay, or defraud creditors of the bankrupt? Under sec. 2323, Stats. 1917, the question of intent to defraud in a case like the instant case is made a question of fact, and therefore a question for the jury. In order to prove fraud in the instant case it is necessary not only that the bankrupt executed the chattel mortgages without adequate consideration or with intent to hinder, delay, or defraud his creditors, but that the mortgagees at the time either knew of such intent or had knowledge of such facts and circumstances as would put a prudent man on inquiry, which if prosecuted with ordinary diligence would lead to a knowledge of such intent. *Kaufer v. Walsh,* 88 Wis. 63, 70, 59 N. W. 460; *Hopkins v. Langton,* 30 Wis. 379; *Hooser v. Hunt,* 65 Wis. 71, 26 N. W. 442.

Fraud is the product of greed and selfishness. It is generally designed in secret and operates in the dark. It results from the desire of cunning and designing persons to injure others and to benefit themselves. The plans pursued, as a rule, are carefully premeditated and executed. When a general scheme is concocted by persons closely tied by blood or marriage relationship, it is oftentimes impossible or difficult to unravel, and in a vast majority of cases the fraudulent intent and the participation of all parties therein can only be proven inferentially by circumstantial evidence.

The fact that *Werner Stein* executed these mortgages to his father and to his mother-in-law did not of itself constitute a badge of fraud, but the execution of such mortgages constitutes circumstances proper to be shown, and, when shown, calls for closer scrutiny and clearer explanation of the transaction. *Bleiler v. Moore,* 88 Wis. 438, 60 N. W. 792, and *Hoxie v. Price,* 31 Wis. 82.

Not only did *Werner Stein* execute these two chattel mortgages to very close relatives during periods of time while he was heavily indebted and threatened by creditors,

but the foreclosures of these two mortgages followed each other closely in point of time, with similar results, all indicating a common design from which a jury could readily deduce concerted action to effectuate a common purpose. The foreclosures of the chattel mortgages were followed by the organization of the defendant company, the transfer of the mortgaged property to the company, and the issuance of stock as above stated, all with the result that in the end the valuable and available assets of the debtor came into the hands of the defendant corporation, with all of the stock held by his immediate and close relatives. The organization of the defendant corporation was followed by the defendant *Stein's* voluntary assignment for the benefit of his creditors, and as a final result the defendant *Werner Stein* was declared a bankrupt.

Now let us view the issues involved from the standpoint of other facts and circumstances adduced. When the mortgage for $1,500 was executed to A. W. Stein, it appears from the testimony of Hubert that *Werner Stein* told him that he, *Werner,* was not indebted to his father, but that his object in executing the blanket mortgage to his father was to protect the property from his creditors, and that in any event he could have implicit faith in his father, and that his father would not do anything harmful or detrimental to him. *Werner Stein* also testified that he kept no account of moneys advanced to him by his father, covering a long period of time, or of any indebtedness owing by him to his father for work performed, and that his father at no time had made prior demands of him for repayment of the sums owing. Nor does it appear from the evidence that the father had made prior demands for payment of the sums advanced or of other indebtedness, and it appears that the only memorandum kept of the alleged indebtedness was contained in a little pocketbook which had been destroyed by fire.

The indebtedness to the Merchants & Manufacturers Bank was not even due, and the bank did not press the debtor

for payment. Mrs. Schattschneider, the mother-in-law, testified that she raised the $1,500 which she claimed to have given to her son-in-law on a mortgage on her real estate, and at the same time testified that at the time she had $1,400 in cash in her home which she was afraid to deposit or leave with a bank for fear of losing it by so doing.

Under the clear outstanding facts and circumstances as above detailed a situation arose which required the submission to the jury of the question of fraudulent intent and the participation of all parties interested, under the provisions of sec. 2323, Stats. 1917, and under the decisions in *Kaufer v. Walsh,* 88 Wis. 63, 59 N. W. 460, and *Rindskopf v. Myers,* 87 Wis. 80, 57 N. W. 967.

We therefore conclude that the civil court erred in directing a verdict for the defendants, and that the circuit court was fully justified in setting aside the judgment of the civil court and in ordering a new trial.

During the course of the trial in the civil court numerous questions were asked of the defendant *Werner Stein* and of other witnesses on cross-examination, with the object and purpose, evidently, of testing the credibility of the witnesses and of disclosing circumstances which might properly have been considered in determining whether or not the transfers above referred to were made with fraudulent intent. Upon objections being interposed the cross-examination was greatly restricted, and in many instances proper inquiry was frustrated. While the learned circuit judge, in his order setting aside the judgment of the civil court and in granting a new trial, did not specifically give his reasons for his action, nevertheless it can readily be presumed that such rulings on the part of the trial court did not accord, but on the contrary prevented, a thorough investigation, as is contemplated in fraud cases, of the issue of fraudulent intent involved in the trial.

The object of all examinations, direct and cross, is to elicit the truth. The rules pertaining to direct examination,

which prohibit leading questions and require the best evidence, etc., are designed solely for the purpose of eliciting the truth.    On cross-examination, however, particularly where the question of fraudulent intent is involved in the issues, these rules must be greatly relaxed and in many instances ignored.    The latter deviation is also based upon the general object and purpose in the law pertaining to trials for the purpose of ascertaining and eliciting the truth.

It is therefore said in Jones, Evidence (2d ed.) § 842, that "Where the issue is whether fraud has been committed, it is error for the court not to permit an exhaustive and searching cross-examination of the party against whom the imputation is made."    See, also, *Kalk v. Fielding*, 50 Wis. 339, 7 N. W. 296; *Anderson v. Walter*, 34 Mich. 113.

Of course the limitation of cross-examination is to a large extent within the discretion of the trial court.    However, in the instant case we are convinced that in unnecessarily restricting the cross-examination the court committed error, and as the result thereof plaintiff was unable to pursue his inquiry adequately in an effort to establish the necessary facts and circumstances which were the proper subject of inquiry.

Defendants on this appeal argue that inasmuch as the plaintiff failed to prove the condition of the bankrupt's estate and that claims were filed in such bankrupt estate, no necessity was shown for the bringing of this action.    In *Mueller v. Bruss*, 112 Wis. 406, 412, 413, 88 N. W. 229, this court held:

"Unless it is made to appear that the property so conveyed is needed to pay the claims filed against the debtor, the trustee has no right to set such conveyances aside."

The trustee represents the creditors, and with all the rights of the creditors to avoid fraudulent transfers.    In short, the creditors are prevented, by the paramount act of Congress, from obtaining judgment upon which to base the right to attack the conveyance of their debtor.    But this does not

obviate the necessity of the trustee alleging and proving that claims of creditors have been filed and allowed as contemplated by law.   He may question the *bona fides* of the transfer of the debtor's property in the interests of those creditors only to whom he may distribute the estate which shall come into his hands.   That outstanding obligations exist is not enough.   Unless these are established and allowed, as authorized by statute or the act of Congress, he has no authority to pay them from moneys that may come into his hands, to say nothing of the property the debtor has transferred to others.   And unless it appears that the representative of the creditors may appropriate the proceeds of property in the hands of third parties to the satisfaction of the debtor's obligations, setting aside transfers to them as fraudulent would be of no practical advantage.   Sec. 57 of the Bankruptcy Act (30 U. S. Stats. at Large, 544, ch. 541) provides for the proof, adjudication, and allowance of the claims of creditors, and sec. 65 directs the declaration of dividends on all allowed claims.   Where no claims are allowed there are no dividends to be paid by the trustee, and therefore no occasion to interfere with the property in the hands of third persons.   To entitle the trustee to relief the assets must appear insufficient to satisfy the claims of creditors.   *Crary v. Kurtz,* 132 Iowa, 105, 105 N. W. 590, 593; *Deland v. Miller & Cheney Bank,* 119 Iowa, 371, 93 N. W. 304.   In 17 L. R. A. N. s. 351, an exhaustive collection of cases on the subject will be found.

At the close of the testimony in the civil court the defendants moved for the direction of a verdict.   The court in its oral opinion based its direction solely upon the ground that the plaintiff had failed to prove a fraudulent intent and a failure on the part of the mortgagees and of the defendant corporation to participate in such fraudulent intent.

There is nothing in the record in the civil court to indicate that the point made in this branch of the case by defendants' counsel was called to the attention of the trial

court. Nor does the record in the circuit court disclose that such point was brought to the attention of that court. Had the trial court's attention been called to this point, an opportunity would have been afforded the plaintiff to prove the necessary requirements, which the trial court would have readily granted in the interests of truth and justice. The question having been raised, however, for the first time on this appeal, appellants' counsel cannot take advantage thereof. *Cappon v. O'Day,* 165 Wis. 486, 162 N. W. 655.

The order of the circuit court setting aside the judgment of the civil court and ordering a new trial is therefore affirmed.

*By the Court.*—Order of the circuit court affirmed.